Commonwealth *v.* Friedman, Appellant.

Argued October 20, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*J. A. Welsh,* and with him *John L. Pipa, Jr.,* for appellant.

*Edward Raker,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., November 20, 1930:

The defendant was indicted for and convicted of attempted arson.

The evidence of the Commonwealth discloses that on the 3d of February, 1928, about 11:00 o'clock, an odor of smoke was detected in the apartment above an automobile accessory store conducted by the defendant on the first floor of a three-story building. The investigation that followed showed that the smoke

was from a burning fuse on the floor of the store. The lighted end was near the door in the front part of the store and from there it ran along the counter to the middle of the room where it ended in a sack of powder surrounded by twenty-one pasteboard containers filled with gasoline, and there were, in addition, quantities of grease, oil and other combustibles nearby. From the end of the burning fuse toward the door there extended a black mark or scar upon the floor for a distance of four feet, two inches; the unburned portion of the fuse was twenty-two feet in length. The doors were locked and the windows secured. The fire department was summoned and an entrance gained by breaking the rear cellar door.

The defendant was notified and appeared shortly thereafter, entering the building through the front door which he opened with a key. He immediately denied all knowledge of the obvious preparation to burn the building and stated in the presence of several witnesses that he had not been in the store since 4:00 o'clock that afternoon, and that he was being "framed up." Testimony showed that the only two keys to the storeroom were in the possession of the defendant. The witness, Forred, who conducted a business across the street, testified that he was well acquainted with the defendant and that he was positive he had seen him in his store at 10:30 that night, near the place where the lighted end of the burning fuse was discovered. By a test, it was demonstrated that the fuse would burn one foot in seven minutes. It was contended upon the part of the Commonwealth that the fuse must have been lighted about the time Forred saw the defendant in his store. The defendant denied that he made the statement that he was not in the store after 4:00 o'clock and said that he left the storeroom about 9:25 of the night in question.

That night the defendant was arrested by the Shamokin police and placed in the lockup. The following morning, some members of the state police came to Shamokin and took him to the Northumberland County prison, stopping at the police barracks in Sunbury where they gave him a piece of paper and requested him to sit down and write in detail where he had been the previous day. This paper was offered in evidence and the court subsequently sustained the motion to strike it from the record.

The appellant in his first, second, fifth, eighth and ninth assignments of error contends that he was entitled to immunity under the Act of April 27, 1927, P. L. 450, and that the jury should have been instructed to acquit him. The fourth section of this act which relates to fire and fire prevention, etc., provides that the state police may "at any time investigate the origin or circumstances of any fire occurring in this Commonwealth," and are clothed with the power to summon witnesses and to compel them to testify in relation to any matter which may be the subject of inquiry and investigation. Under the provisions of the act, "no person shall be prosecuted or subjected to penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may have been required so to testify or produce evidence, documentary or otherwise; and no testimony so given or produced shall be received against him upon any criminal investigation or proceedings."

If the state police, in making an investigation of a fire to determine its origin, cause and other circumstances in connection therewith, summoned and required this defendant to testify, the evidence obtained by them could not have been used against him. It is true that Officer Robenolt, a state policeman called by the defendant, testified that he was investigating the cause of the fire and that he examined this defendant.

The examination consisted only of obtaining a statement from the defendant of his whereabouts the day of the arrest; as the witness said, ''There was not much of an examination done.'' Nothing was asked or said relating to the origin or circumstances of a fire. The defendant was under arrest but he was not summoned or compelled to testify and there was no such investigation conducted as contemplated by the act. The statement he made had the same effect as any other statement of one under arrest. Certainly no immunity was intended to one already in custody and charged with the crime. This conclusion is in harmony with the interpretation placed upon the act in the case of Commonwealth v. Friedman, 94 Pa. Superior Ct. 491. The action of the lower court, in our view, was entirely proper.

The twelfth assignment of error complains of the court's refusing to receive an offer to prove by the teller of the People's Trust Company, of Shamokin, the balance that the defendant had to his credit in the bank at the time of the commission of the crime, for the purpose of showing that there was a lack of motive of any financial necessity to collect the insurance. A balance in bank to the defendant's credit would not have shown the extent of his obligations and the mere fact there was a balance in bank did not prove that he was free from financial pressure. The rejected evidence would not have thrown any light on the guilt or innocence of the defendant. The court did admit testimony of the value of the stock and the amount of the insurance, which was pertinent to show want of motive.

We have carefully examined the other assignments of error, which relate to the conduct of the trial and the charge of the court, but find nothing therein that gives just cause for complaint.

The conviction of the defendant depended upon circumstantial evidence and it was for the jury, with their experience and the exercise of discretion and reasoning power, to determine the guilt or innocence of the defendant, after seeing and hearing the various witnesses. If they had accepted the testimony offered upon the part of the defendant, it would have been their duty to find a verdict of not guilty. On the other hand, there was testimony of a damaging character against the defendant. In our system of jurisprudence, it is necessary to rely upon the judgment of the jurors summoned to try their fellowmen charged with crime, and although their conclusions may not be infallible, we accept their findings of facts founded on evidence which is determined by the trial judge to be competent and sufficient.

A review of the entire record brings us to the conclusion that the defendant had a fair trial which was properly conducted by the trial judge.

The judgment is affirmed and the record remitted to the court below, and it is ordered that the defendant appear in that court at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which has not been performed at the time the appeal in this case was made a supersedeas.