Commonwealth *v.* Pulemena, Appellant.

Argued March 8, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Charles J. Bufalino*, and with him *Frank L. Pinola*, for appellant.

*J. Harold Flannery*, Assistant District Attorney, and with him *Thomas M. Lewis*, District Attorney, for appellee.

Opinion by Trexler, P. J., July 13, 1934:

Jacob Pulemena was indicted for arson. He was found guilty of procuring some one to commit arson. The first matter urged by the appellant is that there was not sufficient evidence to convict of the commission of the crime, or to warrant a conviction on the count charging procuring. The evidence shows that the fire was of incendiary origin. An examination of all the testimony of the case has led us to the conclusion that there was sufficient evidence to prove the charge.

The testimony is substantially as follows: The fire was found raging in the rear of the dwelling house owned by a family living in the front of the premises and rented and occupied by the defendant and his family, consisting of his wife and child. Possibly the defendant would have escaped conviction if it had not been for the statements which he made which the jury could find were false and calculated to deceive the persons who were investigating the fire. Defendant testified that he had left Pittston for Buffalo, New York, at 9:00 P. M., in the night of the 20th of May, or about six hours before the fire was discovered. In this he was corroborated by his wife who told the officers that they left in response to a special delivery letter. Investigation revealed there was no such letter received. Defendant told the authorities that he had purchased two excursion tickets for Buffalo at the Laurel Line Station in Pittston at or about 9:00 P. M. on that date. There was proof that this was not true. Defendant testified that he returned to the home at Pittston on Monday at about 5:40 A. M., but finding the house boarded up and evidence of the fire, did not enter. The first time he entered the home was the following Saturday with his counsel for the purpose of checking on the insurance claim. Although the officers had searched the trunk which was in the house immediately after the fire and testified that there was no policy of insurance in it, defendant stated that ten days later he returned to the building alone and rescued his insurance policy from the trunk.

The defendant, in order to give some explanation as to how the fire originated, claimed that there had been labor disputes at the coal company where he was employed and that pickets had accosted him and warned him to discontinue work. When originally interrogated, he told an investigator he did not know of anybody who might have done it. He never made any

complaint to anyone that he had been approached by the pickets and threatened. His decision to visit Buffalo was made the same evening and apparently communicated to no one and it is hard to explain how people who wished to injure him should have selected the very evening when he was absent. The fact is that there was a mine fuse used, such as the defendant had in the mine, that it was conducted from the side window, over the sill, down the wall and across the kitchen floor to a wooden box near the stove in which was contained a substance, described as black powder, wrapped in newspapers. Nearby were two open five gallon bottles, or carboys, containing turpentine and kerosene; all highly inflammable. The windows were open. These are all circumstances which were for the consideration of the jury. One thing is certain that the house was in the control of the defendant and that the circumstances, as presented by the witnesses of the Commonwealth, pointed to the guilt of the accused and were inconsistent with his innocence.

There is a clear indication that the preparation of the fire was made by someone in the house and the powder fuse was to be lighted at the open window to which the fuse led to the side of the house. There was sufficient to lead to the reasonable conclusion that the defendant had prepared the materials for the fire and in view of the fact that the preparations evidently were made so that the fire might be started from the outside, the jury could adopt the theory that the defendant did not light the fire himself, but procured some one to do it.

We repeat what has been said by our Brother BALD-RIGE, in Commonwealth v. Friedman, 100 Pa. Superior Ct. 164, quoted by the lower court:

"The conviction of the defendant depended upon circumstantial evidence and it was for the jury, with their experience and the exercise of discretion and

reasoning power, to determine the guilt or innocence of the defendant, after seeing and hearing the various witnesses. If they had accepted the testimony offered upon the part of the defendant, it would have been their duty to find a verdict of not guilty. On the other hand, there was testimony of a damaging character against the defendant. In our system of jurisprudence, it is necessary to rely upon the judgment of the jurors summoned to try their fellowmen charged with crime, and although their conclusions may not be infallible, we accept their findings of facts founded on evidence which is determined by the trial judge to be competent and sufficient.''

It is urged that the court erred in overruling the point wherein he was asked to state that ''everyone of you jurors must join in the conclusion that the accused is guilty beyond a reasonable doubt, although each individual mind has to arrive at his conclusion separately.'' The court very fully had charged the jury as to reasonable doubt and this point submitted would have added nothing of value and was merely requesting the court to charge upon something that was self-evident. The phrase that each individual man must arrive at his conclusion separately might be confusing, for it might imply that there should be no discussion of the case, but merely the polling of the jury, in the jury room, to ascertain what conclusion each one had reached.

The judgment is affirmed and the record remitted to the court below and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence, or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.