## Commonwealth *v.* Mowad, Appellant.

538

Argued April 17, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*J. Julius Levy,* with him *Carlon M. O'Malley,* for appellant.

*John W. Murphy,* Assistant District Attorney, with him, *Michael J. Eagen,* District Attorney, for appellee.

OPINION BY PARKER, J., July 13, 1939:

James Mowad and four other persons were charged in an indictment containing three counts with (1) unlawfully, wilfully, maliciously and feloniously setting fire to and burning a certain dwelling house, No. 136 Robinson Street in the city of Scranton, (2) with causing to be burned the said dwelling house, and (3) with aiding, counselling and procuring the burning of said dwelling house. A jury found James Mowad guilty

on the third count of the indictment. He was accordingly sentenced and has now appealed to this court.

The appellant asks for a reversal upon the grounds that the evidence was not sufficient to support the verdict and that the trial judge committed error in his charge to the jury. The main argument being directed to the sufficiency of the evidence, it will be necessary to refer to the testimony in some detail.

George Yamin, Catherine Yamin, James Mowad and Haned Mowad, his wife, four of the five defendants jointly indicted and tried had their abode in a frame building, No. 136 Robinson Street, owned by Catherine Yamin, the mother of George Yamin and Haned Mowad. The building was located between Robinson and Ninth Streets near the intersection of those two streets and contained three apartments. The grade of Robinson Street was about fourteen feet above the level of Ninth Street. An apartment level with Ninth Street was occupied by Nora Murray and a boarder, John Rufibach; above that apartment was another, level with Robinson Street, which was occupied by James Mowad, his wife and four small children; while above that apartment was another in which Catherine Yamin, the owner, George Yamin and his wife resided. The three apartments were not connected and access was had to the first and third floors by means of an outside stairway from Robinson Street. It was not even suggested that Mrs. Murray or her boarder had anything to do with the burning of the building.

Shortly before midnight on March 13, 1938, Mrs. Murray and Rufibach were aroused by an unusual noise on the floor above them; this was followed by more noise and then a violent explosion, all within two or three minutes. These tenants fled to the street and discovered flames coming from the top apartment. About this time Mrs. Mowad, her children and Catherine Yamin came from the house in their night clothes. Addessa, the fifth defendant, who was in the house at

the time of the explosion, suffered some broken bones and was so severely burned that it was necessary for him to be taken to a hospital. While he did not take the stand it was shown that he had stated that he could not tell whether he was blown out of the upper floor or in his excitement jumped out of the window. The evidence indicated that James Mowad and George Yamin were not in the building after the fire was discovered. The fire department arrived promptly and extinguished the blaze in about an hour confining the flames to the top apartment.

Firemen and police officers on arrival at the scene discovered a situation which clearly indicated incendiarism. In the Mowad apartment in the hallway was a square galvanized can partly filled with red gasoline; in one of the bedrooms bedclothes were piled at random on the floor and on top of these was a large dishpan containing red gasoline; in the kitchen there was a coal pail filled with what appeared to be automobile oil; at other places there were small cooking utensils containing gasoline and the smell of gasoline was present throughout that apartment.

As soon as it was safe to examine the Yamin apartment, the top floor, there was discovered in the bathroom a washing machine half filled with red gasoline and in the bathtub there was clothing soaked in gasoline. Clothing that had the odor of gasoline was also found at other places in the apartment. A hole was found in the side of the kitchen wall leading into another building which the jury might, under the evidence, have found had been placed there as a result of preparation rather than by the explosion or by fire. A trap door was missing from the ceiling in the bathroom thus furnishing a draft and in the kitchen a live electric wire leading from a socket and in contact with the stove was so placed that a fireman who entered the apartment and placed his hand on the stove was shocked.

We have referred to sufficient facts to demonstrate that the jury could properly conclude beyond a reasonable doubt that the fire was of incendiary origin and that a criminal agency was shown. We might also add that the jury probably concluded that the "torch" was applied somewhat sooner than had been intended. It remains to inquire whether there was sufficient evidence to sustain the finding of a jury that James Mowad aided, counselled or procured the burning.

Before considering the evidence connecting the appellant with the burning, we will refer to certain alleged inconsistencies stressed by the appellant. Comment is made on the facts that Addessa was acquitted by direction of the court, that Haned Mowad, Catherine Yamin and George Yamin were acquitted by the jury and that Mowad was found guilty only as to the third count. Although the verdict of the jury as to James Mowad was "guilty on the third count" that amounted to an acquittal on the first two counts: *Com. v. Danis,* 130 Pa. Superior Ct. 597, 598, 198 A. 483; *Com. v. Curry,* 285 Pa. 289, 298, 132 A. 370. Some wonder may be occasioned by the fact that at least some others of the defendants charged in the indictment were not convicted but such inconsistency on the part of the jury is not sufficient to set aside the judgment as to Mowad: *Com. v. Kline,* 107 Pa. Superior Ct. 594, 164 A. 124. As was stated in the Kline case: (p. 602) "We interpret the acquittal as no more than their [the jury's] assumption of a power which they had no right to exercise, but to which they were disposed through lenity."

The Act of April 25, 1929, P. L. 767, §1 (18 PS §3021) provides in part that "any person who wilfully and maliciously ...... aids, counsels, or procures the burning, of any dwelling house ...... whether the property of himself or of another, shall be guilty of the felony of arson." The Act of March 31, 1860, P. L. 427, §44 (18 PS §3672) provides that "if any person

shall become an accessory before the fact, to any felony, whether the same be a felony at common law, or by virtue of any act of assembly now in force or hereafter to be in force, such person may be indicted, tried, convicted and punished in all respects as if he were a principal felon." The effect of this act is to make an accessory before the fact indictable for a substantive felony: *Brandt v. Com.*, 94 Pa. 290, 301.

The facts heretofore stated show not only that there was a fire in a dwelling house and that it was of incendiary origin, but also that the tracks left by the perpetrator warrant certain other definite conclusions. The occupants of the second and third stories were closely related by blood and marriage. They were Syrians by nationality, some of them speaking poor English, and they frequently took their meals together at the store of George Yamin. The apartments were not connected. Members of the family had been in the building early in the day of March 13 and there was then no evidence of the presence of gasoline if we accept their own version of the occurrences. Mrs. Mowad, her children and Catherine Yamin returned to the apartment at 9 P. M. and the elders testified that they did not detect any odor of gasoline. Very significantly, they explained that they retired that night without the use of a light although there was electricity in the house and they did not go to the bathroom or have the small children do so. It will be noted that there was gasoline in an open receptacle in one of the hallways and in numerous receptacles at other places. It is absurd to assume that the gasoline could have been there and not have been detected by the women when they returned at 9 P. M. or that the extensive distribution of gasoline could have been made thereafter in both apartments without the knowledge of Mrs. Yamin or Mrs. Mowad. If gasoline had been placed at only one location it would be possible to conclude that the preparations had been

made by some evil minded third party after 9 P. M. That hypothesis, however, is eliminated as not being within the bounds of reason when we take into account the wide distribution of the gasoline throughout both apartments and that a live wire was connected to the kitchen stove. We are unable to find grounds for any other reasonable hypothesis than that in the placing of these inflammatory materials in the house the actual perpetrator was aided, counselled and procured by some members of the family in both apartments.

We then naturally inquire as to the evidence connecting James Mowad with the crime charged, or, more particularly, showing that he aided, counselled or procured the felonious burning. We will briefly summarize some of that testimony.

First, we find elaborate preparations for a sudden and destructive fire in the apartment occupied and controlled by James Mowad, the appellant. This was alone powerful and damaging evidence against him. In *Com. v. Pulemena*, 113 Pa. Superior Ct. 430, 173 A. 462, and *Com. v. Buti*, 113 Pa. Superior Ct. 385, 173 A. 890, convictions were affirmed by this court upon less testimony than that to which we have already referred.

James Mowad, and other adult members of the Yamin family, failed to exhibit the slightest interest in ascertaining who was the perpetrator of this outrageous act apparently intended to destroy the property of certain of the defendants. In fact, some of them argued on the stand that if they did not burn the building why should they be concerned as to who placed the gasoline there. In other words, they were concerned alone with defending themselves. James Mowad's testimony which we now cite is significant: "Q. Did you make any inquiry or attempt to find out how that gasoline got in your bedroom, Mr. Mowad? A. It is none of my business. Q. Did you ever ask your wife about it? A. No, sir. Q. Did you ever ask George Yamin about it?

A. No, sir. Q. Why? A. Why? Because I know it —everybody talked about some gas 'in your house'. I did not have to ask anybody." This was not the reaction of an innocent person.

It was established by testimony that we have no doubt the jury accepted that at 1:10 A. M., March 14th, James Mowad took a cab from the center of Scranton to his home and arrived about 1:17 A. M., before the fire was entirely extinguished. When first interrogated by the police as to his whereabouts immediately before the fire, he told a story at variance with that testified to at the trial and inconsistent with the testimony produced by him and intended to establish an alibi. His first story was that about 11 P. M. he had walked down town. At the trial he produced a witness who said that he drove Mowad to the center of Scranton between 11 and 12 P. M. There were numerous other discrepancies to which it is unnecessary to refer. There was also some evidence that when the firemen arrived at the scene of the fire, Mowad was standing in front of the Elite Poolroom one and one-half blocks from the fire with a billiard cue in his hand and apparently unconcerned and making no move to go to his home. While the jury undoubtedly accepted the evidence of the taxi driver and the company records that Mowad was driven from the center of the town at the time indicated, it may have disbelieved the other witnesses and found that Mowad walked to the center of town after the fire started. In other words, the alibi set up by the defendant may well have counted against him. It was built around certain facts that were established as true, but in doing so he presented a situation which indicated preparation prior to the fire for the setting up of an alibi.

It was a peculiar coincidence that both Mowad and George Yamin should have kept away from their homes for a number of hours prior to the fire, although the Yamin store, where most of them ate on this day, was

nearby. It was Sunday. Early that morning Mowad slept at a Turkish bath. He went to church, several clubs and restaurants during the day and evening, but was careful to place himself away from his home, the most natural place for him to have been, for at least a part of that day. A careful reading of the testimony persuades us that the jury may well have concluded that the alibi was fabricated and in addition that Mowad planned his movements for twenty-four hours before the crime was committed in order to furnish a semblance of credibility to his testimony and that of his witnesses who supported his claim.

Even a reading of the testimony, without having heard or seen the witnesses, presents a picture that casts serious doubt on the credibility of Mowad's testimony. His whole attitude upon the stand pointed to his guilt and it may well have been that those who saw and heard him had additional evidence of his insincerity.

Recognizing the rule applicable to circumstantial evidence (*Com. v. Bone,* 64 Pa. Superior Ct. 44; *Com. v. Byers,* 45 Pa. Superior Ct. 37; *Com. v. Goldberg,* 130 Pa. Superior Ct. 252, 261, 196 A. 538), it seems to us that the facts and circumstances are not only consistent with and point to the guilt of the accused, but they are inconsistent with his innocence. We are not here concerned with the fact that the jury found some of the other defendants not guilty. That was their good fortune and was probably due to the hesitation of some jurors to convict upon circumstantial evidence. We have no doubt of the justice of the verdict.

The appellant in his fourth assignment of error complains of a part of the charge of the court to the jury. In the charge the court referred to the matter of insurance and said that it was "commented that it was not shown to be overinsurance" and then said "it is a circumstance you have a right to consider, whether the insurance was excessive or whether it was not."

We find no fault with this statement or anything that was said in immediate connection therewith. It is true that there was little if any evidence of overinsurance. Nevertheless it was proper to show that there was a substantial amount of insurance on the building and its contents. If there had been no insurance on the property it might have been difficult for the jury to find any motive for the burning. We do not interpret the court's instruction as counsel for the appellant does. In substance, all the court said was that the fact that there was insurance on the building, whether it was excessive or whether it was not, was for the consideration of the jury. In any view of the case, no harm was done to the defendant. In this connection we might say that the charge of the court fairly stated the essential facts and correctly stated the applicable law. In fact, the charge was, in our opinion, an able presentation of the matter in controversy. We are convinced that the defendant had a fair trial and that the evidence supported the verdict.

The judgment of the court below is affirmed and it is ordered that the appellant appear in the court below at such time as he may there be called and that he be by that court committed until he has complied with the sentence or any part thereof which had not been performed at the time the appeal was made a supersedeas.

DISSENTING OPINION BY RHODES, J.:

I am unable to agree with the conclusion expressed in the majority opinion. My analysis of the evidence convinces me that it is insufficient in volume and quality to overcome the presumption of defendant's innocence. At most, the Commonwealth established that defendant might have known that something was going on; as a matter of fact, I think there are strong suspicions that he did. But mere suspicion and possibility of guilty connection are not sufficient to sustain the convic-

tion. *Commonwealth v. Benz,* 318 Pa. 465, 467, 178
A. 390, 391; *Commonwealth v. Pogach,* 119 Pa. Su-
perior Ct. 510, 519, 180 A. 126. The facts, including
defendant's conduct and method of living, do not give
rise to a logical inference that defendant aided, coun-
selled, or procured the burning of Catherine Yamin's
building. The fire had its inception about 12 o'clock
on Sunday night, March 13, 1938, in the apartment oc-
cupied by Catherine Yamin who was the owner of the
building. When the fire started she and William Ad-
dessa were present. The latter, who was acquitted by
the jury by direction of the trial judge, was either
blown out of the Yamin apartment by the explosion or
jumped out. The fire was confined to the Yamin apart-
ment, and never reached the apartment below occupied
by defendant and his family. Defendant's wife and
their children returned to their apartment about 9 P. M.
Sunday night, and retired. I do not consider it be-
yond the realm of possibility that after Mrs. Mowad
and her children had retired some individual entered
the apartment and placed gasoline therein as described
in the testimony. It is significant to me that the elabo-
rate preparations for the fire had been made in the
Yamin apartment where there was also the electrical
connection which could have had no other purpose than
producing a fire, and that Catherine Yamin, owner of
the building, and Addessa were there in her apartment
at midnight when an explosion occurred and the fire
started. The explosion was probably premature. I
cannot conclude without some substantial evidence that
defendant aided, counselled, or procured the placing of
gasoline and other inflammable materials in his apart-
ment, where his children and wife were to sleep, for the
purpose of burning the Yamin building. With the
preparations which were made it would clearly seem
that the probable result, if the fire had been successful,
would have been the destruction of defendant's wife and
their children as well. I differ with the appraisal of

548

the evidence made in the majority opinion. I think that the gasoline could have been placed after 9 P. M. in the Mowad apartment and also in the Yamin apartment. It is true that it was distributed throughout both apartments, but the live wire was connected to the kitchen stove in the Yamin apartment where Catherine Yamin was from 9 P. M. until the fire occurred. The wire was exposed, and the copper end was visible where it was fastened around the stove. Defendant may have aided, counselled, or procured the actual perpetrator, but the Commonwealth, I believe, failed to prove it. I find no evidence to connect defendant with Addessa or Catherine Yamin, or, for that matter, with anyone else who may have participated in this incendiary fire. Defendant was not present at the fire, and had not been at his apartment since Saturday afternoon. Although his testimony may have been slightly conflicting, such conflicts were not of such nature as to sustain a conviction in this case. It is readily distinguishable from the testimony of the defendant in *Commonwealth v. Pulemena,* 113 Pa. Superior Ct. 430, 173 A. 462. This defendant's conviction should not be sustained on proof that does not measure up to the legal requirements, although the facts and circumstances may create a suspicion of guilt. I would therefore reverse the judgment and discharge defendant.