Commonwealth *v.* Tomaino, Appellant.

Argued November 20, 1950. Before Hirt, Reno, Dithrich, Ross, Arnold and Gunther, JJ. (Rhodes, P. J., absent).

*Vincent M. Casey,* with him *Eugene Nogi, James E. O'Brien, Nogi, O'Malley & Harris* and *Casey, Power & Savage,* for appellants.

*William J. Kearney,* Assistant District Attorney, with him *Carlon M. O'Malley,* District Attorney, for appellee.

OPINION BY GUNTHER, J., March 21, 1951:

Joseph S. Tomaino and Thomas Preno, appellants, were indicted on three counts: (1) willfully setting fire to a building; (2) causing the building to be burned; and (3) aiding, counselling and procuring the burning of the building. A jury returned verdicts as to both appellants as follows: "Guilty on the third count, having caused the fire to be set". Both defendants have appealed from the dismissal of their motions in arrest of judgment and for a new trial contending that (1) the evidence is insufficient to support the verdicts; and (2) that the verdicts were so inconsistent and contradictory as to be void.

Appellants were partners in the operation of a bar and restaurant business located on the first floor of the Capitol Hotel, 302 Spruce Street, Scranton. The premises consisted of a lunchroom, dining room, bar and kitchen. Tomaino was in charge of the bar and Preno was the chef. On the evening of October 16, 1948, the last meal was served at 12:00 midnight. Hugh Mosier, the dishwasher, left the premises at 1:20 a.m., Sunday morning. At that time, both appellants and Veronica McCaffrey, a waitress, and her friend, Elizabeth Ham-

ilton, closed the restaurant. Tomaino asked the girls if they wanted a ride home, but they refused and went to another restaurant so that Miss Hamilton could procure a lunch. At this time, i.e., 1:20 a.m., both appellants were observed to be the last persons to leave the premises; they were observed to lock up and thereupon leave the vicinity by automobile. A few minutes after appellants had left the premises, a policeman tried the door to the restaurant and found it locked. Miss McCaffrey testified that as she and Miss Hamilton were walking along the street at about 2:30 a.m., Miss Hamilton called her attention to a car stopped at a red light, stating that it was Tomaino. Miss Hamilton testified that she recognized the car and saw Tomaino, that she called out to him and he made a motion which she indicated as a wave of the hand. The light then changed and Tomaino went on. The fire was discovered at approximately 4:00 a.m., simultaneously by a policeman and by a lodger in the hotel premises above the restaurant. After the fire was subdued by the Scranton City firemen, an investigation of the premises was made in order to determine the origin of the fire. The fire was traced to the kitchen where four separate and unconnected fires were found on the floor and in a partition separating the kitchen from the dining room. At the point of each of the four fires, gasoline soaked rags were found on the floor, stuffed between the floor and a sub-floor, and stuffed in the partition. At one of the fires in the kitchen, the fire had burnt a hole through the floor to the cellar. Metal wainscoating covering the lower portion of the partition had been cut open and gasoline soaked rags pushed into the opening. The partition at this point had been burnt through to the dining room. There was expert testimony that this metal wainscoating had been cut through prior to being burned. The evidence clearly

established that only human hands could have placed these gasoline soaked rags in the places where they were found. The fire spread to the dining room and bar room, and that which occurred in the dining room was described as a "flash fire", i.e., caused by the rapid ignition of accumulating and spreading gasoline fumes, and described as a "hot blazing searing type of fire caused by the explosion of gasoline fumes". The evidence also established that appellants were in serious financial difficulties; that they owed large sums for rent, and that it was necessary on three separate occasions for the landlord to make levies on their property in an effort to collect the rentals. It was admitted by appellants that business was poor and that they had a total of $26,000.00 in insurance, $20,000.00 of which was placed only three months before the fire. Appellants testified that they had considered the possible sale of the business for the sum of $16,500.00. There was evidence warranting the jury in finding that this fire was an incendiary fire and sufficient to sustain a finding that although appellants did not actually "apply the torch", they must have procured the burning of the building by a third person. It is true that the evidence of the Commonwealth was directed more to showing that appellants had actually "applied the torch". Yet, the evidence is unmistakably clear that if appellants did not actually set the fire, the only reasonable explanation for the fire was that they had procured a third party to start it. On this point, the lower court very aptly said: "It is true that the Commonwealth's evidence was directed to proving the guilt of the defendants as perpetrators of the crime because the circumstantial evidence indicated that they were the only persons in direct control of the property, and granted that there was sufficient proof that the fire was of incendiary origin, the defendants were the only

ones who could have set, caused or procured it. The evidence being wholly circumstantial, as is quite usual in arson cases, there was no direct evidence as to who applied the torch. But if the evidence warranted a finding by the jury that no one other than the defendants could be responsible for the fire, it was equally consistent with the evidence for the jury to conclude that the defendants had procured the burning of the building by some one at their command. In our opinion, the evidence would equally well have sustained a conviction on either the first or second count, but clearly a conviction on the third count is not inconsistent with the evidence." The evidence is clear that defendants were in complete control of the premises up to the time of the fire; that they were the last ones on the premises and that no one had access to the premises after appellants left; that Tomaino was seen in the general vicinity at 2:30 a.m., which was approximately one hour after appellants testified they had locked up and closed the business for the night. Various firemen testified that when they arrived at the scene of the fire they found the doors securely locked.

A recitation of the evidence produced by the Commonwealth is amply sufficient to demonstrate that there was sufficient evidence to sustain the verdicts of guilty against both appellants. What was said in *Commonwealth v. Margie*, 165 Pa. Superior Ct. 84, 87, 68 A. 2d 194, is pertinent here. "The evidence of the Commonwealth was sufficient to warrant the conclusion that the defendant was in exclusive control of the building and that the fire was unquestionably of incendiary origin, . . . It was not incumbent upon the Commonwealth to produce direct evidence that defendant started the fire; it was required to show circumstances reasonably and naturally warranting an inference of guilt and of such 'volume and quality as to overcome

the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt': *Commonwealth v. Marino,* 142 Pa. Superior Ct. 327, 334, 16 A. 2d 314".

There is no merit to appellants' final contention that the verdicts rendered by the jury were so inconsistent and contradictory as to be void and not a proper basis for the sentence. Both appellants were indicted for the crime of arson, and the indictments contained three separate counts. Each count charged a separate offense: *Commonwealth v. Didomenico,* 131 Pa. Superior Ct. 113, 198 A. 909. The jury's finding appellants guilty on the third count amounted to an acquittal on the first and second counts. *Commonwealth v. Mowad,* 136 Pa. Superior Ct. 537, 7 A. 2d 596. The verdicts contained within themselves, and by reference to the indictments, all the necessary elements of the crimes, and are good verdicts of conviction upon which sentences may be imposed. Cf. *Commonwealth v. Weinberg,* 276 Pa. 255, 120 A. 406; *Commonwealth v. Greevy,* 271 Pa. 95, 100, 114 A. 511; *Commonwealth v. Carl,* 87 Pa. Superior Ct. 110; *Commonwealth v. Gable,* 7 S. & R. 423; *State v. McNicol,* 143 Ohio St. 39, 53 N. E. 2d 808. Verdicts are to have a reasonable intendment and reasonable construction and are not to be avoided unless from necessity originating in doubt of their import or irresponsiveness to the issues submitted, or unless they show a manifest tendency to work injustice.

The case was fairly and fully tried and submitted to the jury on instructions to which no complaint was made on appeal.

Judgments and sentences affirmed.