**Commonwealth v. Brooks**

*Robert Banks,* for Commonwealth.

*Warren R. Keck,* for defendant.

ACKER, J., July 10, 1970.—The matter for determination comes before this court upon a motion for a new trial and a motion in arrest of judgment. In addition to the usual contentions, i.e., that the verdict was against the law, the weight of the evidence, and the charge of the court, defendant contends that the court erred in permitting the witness, Officer Murrman, to testify as an expert and in charging the jury that they could find defendant guilty of attempted burglary inasmuch as the facts clearly indicate that defendant did, or did not, commit a burglary.

The jury found defendant guilty of an attempt to commit burglary. The defense was that of alibi. The prosecution's evidence disclosed that a young couple, Mr. and Mrs. James Meirer, who had an apartment at 130 Stambaugh Avenue, Sharon, Pa., returned from a football game late in the evening of September 19, 1969. The husband shut and locked the back door and retired to their bedroom upstairs. Nine dollars and some cents were left on a desk downstairs. The husband left his watch on the sink and a pair of pants with $5 and a wallet were left in another upstairs room. Some time later, during the course of the night, the husband heard a bang, which did not cause him much concern because of living in an apartment where such noises were common. The next morning the items mentioned above were missing. Paint chips were found on the floor inside a diningroom window and cafe-type curtains were caught inside the bottom of the window. Fingerprints were seen around the area of the lock and the ground was trampled underneath the window where flowers had been planted. The window

screen was replaced inside out and upside down. Although placed back on the window, the hooks were facing out. The only evidence connecting defendant with the scene of the crime were the fingerprints. Although the police had been at the home the day following the burglary and on several other occasions, the prints were not lifted until October 15th, a period of 25 days. On other occasions, no one was home and they did not desire to do this unless the victims were present. Two prints were lifted and were turned over to the Pennsylvania State Police for analysis. The victims had been instructed not to touch the window until the prints were lifted. It was acknowledged that prints do deteriorate over a period of time. The home was not checked elsewhere for prints, nor was the inside of the window or window sill.

Trooper James Murrman had worked one and one-half years in the Records Identification Section of the Pennsylvania State Police at Butler. He had read some literature published by the FBI dealing with fingerprinting and was presently reading a book entitled, "Fingerprinting." He had had two weeks formal training upon the subject of fingerprinting by the State Police at Harrisburg and on-the-job training of one and one-half years with a superior who had had many years of experience in fingerprinting. He testified that the fingerprinting taken by the Sharon Police were of the right ring finger and the middle finger of the right hand and that they did match that of defendant. There were no points of dissimilarity. There were certain impurities on the prints, however, due to raindrops which had struck the prints before they were lifted, but that they were insufficiently contaminated to prevent a true and correct reading. Twelve points of similarity were found as to one print and 14 as to the other. The occupants testified that the identical prints seen the day after the burglary were, in

fact, the prints removed by the city police 25 days later.

Mr. and Mrs. James Meirer became married on May 31, 1969, and moved in and lived in this apartment continuously down to the time of trial. The wife had washed the windows on several occasions between May 31, 1969, and September 19, 1969. The last occasion was prior to the opening of school in September of 1969. The husband, James Meirer, was asked by defense counsel, "These prints on the window were made approximately when? Answer: Between the dates of the 19th of September, of September 19th and 20th." The effect of the last answer is somewhat nullified, however, by the court inquiring shortly thereafter in an effort to explain a misunderstood question whether the witness had an opportunity to look at the window to see whether the smudges might have been there previous to that day. The answer was no. However, the witness added, "I think I might have noticed them because there were quite a few marks on the window." In addition, the marks on the window were seen in relation to the paint scrapings on the floor and the curtains being caught in the bottom of the window. Therefore, the prints on the window are not unrelated to other pieces of physical evidence bringing the entire matter to the attention of the occupants.

I. *Did the court err in permitting Trooper James Murrman to testify as an expert on fingerprinting?*

The well-recognized rule is that whether a witness shall be permitted to testify as an expert and whether his qualifications have been sufficiently established is largely within the discretion of the trial judge: Commonwealth v. Johnson, 265 Pa. 491, 109 Atl. 218 (1920); Commonwealth v. Snyder, 123 Pa. Superior Ct. 523, 187 Atl. 254 (1936); Commonwealth v. Samson, 130 Pa. Superior Ct. 65, 196 Atl. 564 (1938).

In Commonwealth v. Ametrane, 205 Pa. Superior Ct. 567, 210 A. 2d 902 (1965), affirmed 422 Pa. 83, 221 A. 2d 296 (1966), a county detective testified as an expert that defendant was a "bookie." He had had several years of experience investigating gambling activities. The court concluded, page 575, that he was ". . . admirably suited to interpret the evidence and circumstances involved in this case."

In Commonwealth v. Howard, 212 Pa. Superior Ct. 100, 239 A. 2d 829 (1968), the witness was a worker in the police laboratory. She was not formally educated in her field, but, page 106, ". . . had a wealth of practical experience." In both the Ametrane and Howard cases, the court held that there had not been an abuse of discretion in permitting the expert to testify.

In this case, the expert, in addition to two weeks formal training by the Pennsylvania State Police at Harrisburg, had done certain reading upon the subject and had worked with another police officer who had many years of experience in the field. Although the trooper was not as impressive as a college graduate might have been, he certainly had sufficient experience, knowledge and background to express an opinion in this case.

II. *Does the fact that the jury found defendant not guilty of burglary and larceny, but guilty of an attempt to commit burglary, require the granting of a motion in arrest of judgment or a new trial?*

It has long been held in Pennsylvania that consistency between verdicts on several counts of an indictment or information is unnecessary and that defendant may be acquitted of some crimes and convicted of others, even though under the evidence a jury could convict defendant of all crimes. There are numerous examples of the application of this principle. In Commonwealth v. Procopio, 200 Pa. Superior Ct. 226, 188

A. 2d 773 (1963), a defendant convicted of burglary, but acquitted of possession of burglary tools, where the only point of entry was a broken window and tools were found in the immediate vicinity. Commonwealth ex rel. Davidson v. Rundle, 198 Pa. Superior Ct. 610, 184 A. 2d 599 (1962), per curiam opinion of 27 D. & C. 2d 762, guilty of prison breach and robbery with an accomplice, but not guilty of an assault by a prisoner in an effort to escape. Commonwealth v. Harbaugh, 197 Pa. Superior Ct. 587, 179 A. 2d 656 (1962), defendant convicted of fornication and bastardy, but three others have been convicted of fornication with the prosecutrix during the same period. No arrest of judgment, but new trial. Commonwealth v. Parrotto, 189 Pa. Superior Ct. 415, 150 A. 2d 396 (1959), guilty of operating a lottery and one charge of bribery and corrupt solicitation, but not guilty as to other indictments of bribery and corrupt solicitation. Commonwealth v. Watt, 187 Pa. Superior Ct. 51, 142 A. 2d 423 (1958), defendant convicted of larceny, but acquitted of burglary and possession of burglary tools. Commonwealth v. Wade, 156 Pa. Superior Ct. 88, 39 A. 2d 460 (1944), not guilty as to setting up a lottery and selling lottery tickets, but guilty of being concerned in carrying on a lottery. Commonwealth v. Mowad, 136 Pa. Superior Ct. 537, 7 A. 2d 596 (1939), tried for feloniously setting fire to a dwelling house, causing to burn a dwelling house, aiding, counseling and procuring the burning of a dwelling house. All but defendant found not guilty on all counts and defendant found guilty solely on the count of procuring the burning of a house. Commonwealth v. Bitler, 133 Pa. Superior Ct. 268, 2 A. 2d 493 (1938), conviction for forgery, but not guilty of embezzlement as a result of forgery. Commonwealth v. Campbell, 116 Pa. Superior Ct. 180, 176 Atl. 246 (1935), guilty of false pretenses, but not guilty of conspiracy under same

facts. Commonwealth v. Pursel, 110 Pa. Superior Ct. 110, 167 Atl. 399 (1933), convicted of manufacturing intoxicating liquors, but acquitted on same evidence of possession of intoxicating liquors. Commonwealth v. Kline, 107 Pa. Superior Ct. 594, 164 Atl. 124 (1933), lower court reversed for granting new trial. Case involved mayor who made illegal purchase of truck, guilty of illegal expenditure of public funds, but not guilty of lack of proper advertising. Commonwealth v. Strauss, 89 Pa. Superior Ct. 82 (1926), guilty of conspiracy to burn, but not guilty of setting fire in dwelling house. Commonwealth v. Donato, 87 Pa. Superior Ct. 285 (1926), guilty of conspiracy to extort, but not guilty of attempting to extort. Commonwealth v. Sharpless and West, 31 Pa. Superior Ct. 96 (1906), guilty of falsifying public records, but not guilty of embezzlement of public funds. Commonwealth v. Brown, 264 Pa. 85, 107 Atl. 676 (1919), defendant convicted of first-degree murder as a result of a shootout, but second-degree murder of a second victim of the shootout.

It is, therefore, apparent that the verdict need not be set aside merely because of the inconsistency.

Can it then be contended that, because there was an acquittal of burglary and larceny, the court upon the present motion is required to disbelieve the testimony of the Commonwealth's witnesses that a larceny, in fact, occurred. This is answered contrary to the position of defendant in Commonwealth v. Parrotto, supra, page 422: "An acquittal cannot be interpreted as a specific finding in relation to some of the evidence. As in other cases of this kind, the court looks upon this acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity."

An attempt is an overt act done in pursuance of

an intent to do a specific thing tending to the end, but falling short of the complete accomplishment of it; it must go so far that it would result, or apparently result, in the actual commission of the crime it was designed to effect: Commonwealth v. Berkery, 200 Pa. Superior Ct. 626, 190 A. 2d 572 (1963).

The authority for submission of the offense of attempt is the Act of June 24, 1939, P. L. 872, sec. 1107, 18 PS §5107.

An attempt was submitted to the jury in this case because the Commonwealth never established whether the window it contended was the place of entry was, in fact, locked or unlocked prior to the entry. There was no broken glass. There was no testimony of the use of tools or tool markings upon the window or window frame, although there were paint scrapings inside the window area. It was possible for a jury, therefore, to conclude that although defendant attempted to enter into the premises, he was not, in fact, successful. This, of course, is inconsistent with the subsequent testimony that moneys were, in fact, taken. However, as stated in Commonwealth v. Milkovits, 28 Lehigh 412 (1959), 73 York 182, where a defendant was convicted of obstructing an officer but innocent of assaulting the same officer, Henniger, P. J. stated, page 415: "The ways of a jury are past finding out and it is a beating of the air to attempt to find out . . ." So in this case, the jury had the right to accept a portion of the Commonwealth's testimony but not all of it. In that it was possible that they would do so and not conclude that defendant, in fact, entered the premises to commit the larceny and complete the offense of burglary, attempted burglary was submitted to the jury.

Although not identical, a case sufficiently similar is Commonwealth of Pa. v. Albright, 101 Pa. Superior Ct. 317 (1931). Defendant was convicted of feloni-

ously entering a dwelling house without breaking the same with intent to steal goods and chattels, but found not guilty of burglary and receiving stolen goods. The owner of the residence left at about 7:30 p. m., leaving a pantry door open 'for delivery of groceries but a door leading into the kitchen locked. The upper part of this door had several panes of glass which had been washed at about 3 o'clock of that afternoon. In returning home at about 10:30 p. m., the owners found the house in disarray and that a pane of glass in the kitchen door had been broken and some glass pulled out and piled near the carton of groceries. Fingerprints were taken of the glass. About six weeks later, defendant was arrested on another charge and his prints were taken. The prints were found to correspond. In a landmark case on fingerprinting, the court held that this was sufficient evidence to sustain a conviction.

Defendant cites a series of cases for the proposition that in order for fingerprints which were found to correspond to defendant to be sufficient to sustain a conviction it must be shown that they have been impressed only at the time of commission. So in Anthony v. State, 85 Ga. App. 119, 68 S. E. 2d 150 (1951), the fingerprints were upon a money box of a pinball machine. The possibility was not excluded that others using the pinball machine would have touched the box. Further, another print was found not of defendant. In State v. Minton, 228 N. C. 518, 46 S. E. 2d 296 (1948), fingerprints were found on a broken window of a door of a bar and grill following a burglary. Defendant admittedly was in the establishment and had consumed four or five bottles of beer on the night of the burglary. The area where the prints were found was available to the public. This was held to be insufficient. In Graves v. State, Court of Criminal Appeals of Texas, 43 S. W. 2d 953 (1931), defendant

had been employed by a rubber company and on occasion had been in the office near a filing cabinet and safe sweeping it out. The combination to the safe was written on the back of a calendar on the wall in the same office, which all of the employes knew of. Subsequently, it was found that the safe had been opened and that the inner door was pried open and certain moneys taken. Defendant's prints were found on the filing cabinet next to the safe. Experts, however, testified that fingerprints could have remained as long as 30 days and that defendant had left the employ of the rubber company several weeks before the burglary. This was held to be insufficient evidence for a conviction.

The window in question was of a first-floor dining-room with flowers planted underneath and a screen on the lower portion of the window. The flowers had been trampled, the screen had been removed and placed on upside down with the hooks facing out, cafe-style curtains were caught inside the bottom of the window and paint chips were found on the diningroom floor underneath the window. The marks which looked to the untrained eye like smudge marks were, in fact, fingerprints on the upper part of the window near the bottom of the window frame and the top of the lower window.

The cases cited by defendant and mentioned above in this opinion are all distinguishable on the basis either that defendant and the general public could lawfully have been present to leave the fingerprints upon the glass or defendant himself was employed and, therefore, had the right to be upon the premises where the fingerprints were made. In the instant case, defendant would have no right, nor would the public, to be about the diningroom window. They were noticed contemporaneously with other physical evidence of an attempted breakin. Their location logically

would permit a jury to conclude that the maker of the fingerprints was attempting to enter the building. Therefore, the jury was properly permitted to consider these fingerprints along with the other physical evidence to support the conclusion that defendant not only made the prints, but that he made them at the time that he attempted to enter the building.

Wherefore, defendant's motion must be denied.

## ORDER

And now, July 10, 1970, defendant's motion in arrest of judgment is denied and defendant's motion for a new trial is denied.