STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ANTHONY J. BULLOCK, PLAINTIFF IN ERROR.

Argued March 3, 1925—Decided February 8, 1926—Filed February 23, 1926.

**Crimes—Rape—Verdict of Jury Not Found to be Against Weight of Evidence—While Verdict of Jury Seemed Illogical and Inconsistent, it Need Not be Illegal.**

On writ of error to the Cape May County Court of General Quarter Sessions.

Before Justices PARKER and KATZENBACH.

For the plaintiff in error, *James M. E. Hildreth* and *Henry M. Hartmann.*

For the defendant in error, *William H. Campbell, Jr.* (*John W. Westcott,* of counsel).

PER CURIAM.

This case is before us on a writ of error. The writ was directed to the Court of General Quarter Sessions of Cape May county. It brings up the conviction of Anthony J. Bullock under an indictment charging him with the rape of Eleanor E. Mishler. The indictment under which the plaintiff in error was convicted jointly charged him and his daughter, Mary Bullock, of having committed the crime. The jury acquitted Mary Bullock and returned a verdict of guilty against Bullock.

The plaintiff in error lived at Wildwood, New Jersey. It is inferable from the testimony that he is a man of considerable wealth. He was fifty-nine years of age at the time of the commission of the alleged crime. His daughter was then twenty-one years of age. He was married but living apart from his wife. The members of his household, besides himself, were his mother, Mrs. Francoise Bullock, and his daughter, Mary. The servants of the household were two colored maids. Bullock owned a car which a chauffeur operated.

The complaining witness was a resident of Philadelphia. Her age was eighteen years. Her grandmother had been a companion of Mrs. Francoise Bullock. The father of the complaining witness had died some years before. Her mother had remarried. Miss Mishler had been educated at the public schools in the city of Philadelphia and at a Catholic school. After the completion of her education she sought employment. She had tried several kinds of work. Just prior to the happening of the occurrence in the present case she had been working for the Bell Telephone Company in Philadelphia. She had become ill and had been advised by her physician to cease work temporarily. It was suggested that she might pay a visit to the Bullocks at Wildwood. She wrote to Mrs. Francoise Bullock. Miss Mary Bullock replied to her letter and invited her to visit them at Wildwood. On Sunday, February 19th, 1923, she left Philadelphia on an afternoon train for Wildwood. She arrived in Wildwood after it was dark.

She was met at the station. She occupied the same room with Mary Bullock. This room communicated with the room of Mr. Bullock. Upon her arrival she states she was cautioned by Mary Bullock not to speak to her father about a Miss Jones whom she had met some years before at the Bullock home.

On Sunday evening there was no unusual occurrence in the household. The two girls slept together. During the day on Monday nothing out of the ordinary routine of the daily life happened. Eleanor Mishler testified that Mary Bullock did not sleep with her on Monday night. She said Mary Bullock wore on that night an undershirt of her fathers and was in his room. Miss Bullock said her night dresses were being laundered. On Tuesday evening Mr. Bullock, Mary Bullock and Eleanor Mishler left the Bullock residence with the intention of seeing a moving picture. Upon arrival at the theatre the plan was changed and they did not enter the theatre. Magazines were purchased. All returned to the Bullock home. During the evening Bullock had an outburst of temper upon learning that his daughter intended to go away for a visit. During the evening he told his daughter to get some pictures to show Miss Mishler. The pictures were shown her. They were pictures of nude women. According to the testimony of Eleanor Mishler, Mary Bullock laughted at the pictures and thought them grand. Eleanor Mishler on that evening occupied the bed with Mary Bullock in her room. She fell asleep. She was aroused by seeing Mr. Bullock on the side of the bed with Mary. She tried to get out of the bed but was pushed back and held by Mary Bullock until ravished by Mr. Bullock. She fainted and came to consciousness at daylight. She heard Bullock tell his daughter to muss up the bed in his room. Eleanor Mishler dressed. She could not eat. She left the Bullock house that afternoon. Upon arriving at her home in Philadelphia she went to her room. She stated to her mother that she had a headache. She did not come to the table to eat. Her mother noticed that there was something wrong about

her but could not elicit from her any information. She did not go out. She remained upon her bed. On Friday a married sister elicited from her what had transpired at Wildwood. On Saturday she was taken to the office of a physician who examined her sexual organs. They were red and inflamed. The hymen was ruptured. Their appearance indicated that a few days before force had been applied thereto. Another physician made an examination which confirmed the examination of the first physician. This medical testimony was offered at the trial.

The defense was a complete denial of everything testified to by the complaining witness.

We will first consider the legal points raised by the plaintiff in error.

The first point is that the verdict was illogical, inconsistent and unintelligible. This criticism is made because of the fact that Bullock was found guilty and his daughter, Mary Bullock, was acquitted. The verdict does appear to be illogical as Eleanor Mishler testified that Mary Bullock physically aided and abetted her father in the commission of the crime. It does not follow, however, that if the verdict is illogical it is erroneous. We see no legal error in the jury having returned a verdict of guilty as to Bullock and not guilty as to Mary Bullock. It may be that the jury thought that Mary Bullock was acting under coercion of her father. It is unnecessary, however, to speculate upon the reasons which led the jury to the result which it found. It is sufficient to say that the verdict may be illogical and inconsistent, yet not erroneous. The plaintiff in error suffered no harm by reason of the acquittal of his daughter.

The second point argued by the plaintiff in error is that the trial court erred when it charged the jury in the following language: "Now, so far as the evidence by way of defense is concerned, it rests primarily upon a general denial." The contention is that, not only did the defense rest upon a general denial, but on affirmative testimony to show that the state's case was untrue. It will be observed that the trial judge did not say in this portion of the charge under con-

sideration that the sole defense was a general denial. The court said: "It rests primarily upon a general denial." This was true. It did rest primarily upon a general denial. The trial court left the question of the determination of the facts to the jury. The portion of the charge criticised amounts to merely a comment upon the testimony. Even if the comment was erroneous, which it is not, it would not, under the circumstances, constitute reversible error. *State* v. *Hummer,* 73 *N. J. L.* 714.

The third point argued by the plaintiff in error deals with the allowance of questions asked of Mary Bullock and the plaintiff in error upon their respective cross-examinations. These question related to Miss Jones, who had been a member of the Bullock household some years prior to the visit of Eleanor Mishler, in February, 1923. There were three specific questions asked Mary Bullock on cross-examination and three specific rulings made by the trial court. The specification of causes and reasons for reversal do not sufficiently specify the exceptions to the rulings. The specification is general and in the following language: "Because the trial court, over objection, permitted the witness Mary Bullock to be cross-examined concerning a person by the name of Miss Jones, who was unconnected with the alleged crime and was not in the Bullock household at the time of the commission of the alleged crime." The insufficiency of this specification is a sufficient reason for refusing to pass upon the question presented. We, however, feel that the questions asked were properly allowed. According to the testimony of Eleanor Mishler, she had, upon her arrival, been requested by Mary Bullock not to say anything to her father about Miss Jones. This, we think, afforded the state the right to cross-examine Mary Bullock regarding Miss Jones to the extent to which the trial court permitted the questions. The specification relating to the allowance of the question asked Mr. Bullock on the same subject is for the same reason insufficient.

The plaintiff in error further contends that counsel for the state made improper statements in offering evidence and in interrogating witnesses. An examination of the speci-

fication. of the causes and reasons for reversal discloses that not one of the alleged unfair statements of counsel · for the state is set out as a ground for reversal. We, therefore, cannot consider the contention made in this behalf for the plaintiff in error.

The only remaining question to be considered is as to whether or not the verdict is against the weight of the evidence. An appellate court will not set aside a verdict as against the weight of the evidence, except in those cases where it is clear that the verdict is the result of mistake, passion, prejudice or partiality. *State* v. *Karpowitz,* 98 *N. J. L.* 546.

We have examined the voluminous record in this case with unusual care. While it is true that the testimony of Eleanor Mishler is. flatly contradicted in every particular by Bullock and his daughter; that the other members of the household testified that on the morning after the alleged assault the demeanor of Miss Mishler was the same as during the prior days of her visit, yet we feel that the medical testimony clearly establishes that the complaining witness was ravished; that the act was done during the time she was an occupant of the Bullock household; that her conduct upon reaching her home, as shown by her distraught condition, her unwillingness to talk, her statements to her sister, her testimony at the trial, which related many circumstances which would have been difficult for so young a person to relate if they had not happened, all corroborate her version of what occurred upon her visit. Her testimony has the ring of truth. We have reached the conclusion that the verdict is not against the weight of the evidence.

The judgment of conviction is accordingly affirmed.