254

## UNITED STATES v. STEIN.
### No. 205.

Circuit Court of Appeals, Second Circuit.

March 13, 1946.

Howard R. Hirsch, of Cleveland, Ohio, for appellant.

Eugene J. Donnelly, Asst. U. S. Atty., of Buffalo, N. Y. (George L. Grobe, U. S. Atty., of Buffalo, N. Y. , on the brief), for appellee.

Before SWAN, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

Defendant, having waived trial by jury, was tried to the court below on an indictment in three counts, each charging him with a separate sale of a used automobile at a greater price than that permitted by Maximum Price Regulation No. 540. This regulation was promulgated by the Office of Price Administration under the Emergency Price Control Act of 1942, § 2, 50 U.S.C.A. Appendix, § 902, on July 10, 1944, and became effective on the same date. The parties stipulated that the defendant made the sales in question on July 10, 12, and 24, 1944, and further: "The prices charged and received for the automobiles as aforesaid are not in excess of the maximum prices established by said regulations for such automobiles when sold by a dealer to a non-dealer as warranted cars, but are in excess of maximum prices permitted to be charged by any person who is not a dealer."

The issues as presented to the court were whether the defendant was a dealer as defined in the regulation and thus was entitled to charge the higher price for warranted cars, or, if not, whether he knowingly and willfully violated the regulation and hence the statute, § 205(b), 50 U.S.C.A. Appendix, § 925(b). The court after a trial held he was not a dealer, and concluded that he should be given "the benefit of the doubt" as to his intent in connection with the sales of July 10 and 12, but decided that "there can be no * * * ground for any doubt" that the sale of July 24 was in knowing and willful violation of the regulation. Accordingly it entered judgment of acquittal on the first two counts, and of conviction on the third count. This appeal challenges the sufficiency of the evidence to convict and the appropriateness of the judgment upon the findings as made by the court.

Section 15(b) of Maximum Price Regulation No. 540 defines a dealer as follows:

" 'Dealer' means a person engaged, in whole or in part, in the business of buying, selling, repairing and reconditioning used cars and who maintains a place of business for the display, sale, repairing and reconditioning of such cars. A person who cannot qualify as a dealer because he does not maintain a place for repairing and reconditioning may be approved in writing as a dealer under this regulation by the Office of Price Administration regional office for the region in which his place of business is located, or a district office in that region authorized by such regional office, if he provides adequate evidence to that office that he has established, and is in a financial position to maintain, a working arrangement with a reputable business engaged in the repairing and reconditioning of used cars."

The regulation provides that the price for warranted cars may be charged

by a dealer who warrants the car against defects for thirty days. The definition of dealer just quoted limits this privilege to a person who has, either himself or by arrangement with another and approved as stated, the necessary facilities for repairing and reconditioning the cars sold, that is, for making his warranty effective. Unless he can so qualify, he must accept the lower "as is" price, and the purchaser takes the car in the condition in which it is found. The regulation seems entirely reasonable; it allows the higher price only to those dealers who are in a position, and do agree, to keep the cars in condition for a time, thus prolonging the useful life in wartime of used cars.

At the trial the evidence showed that after a conference held about July 10 the Local War Price and Rationing Board of the Office of Price Administration notified defendant in writing on July 12 that a survey report indicated he did not operate a service department, and hence that he was limited to charging only the lower prices for used cars until such time as he had made application and obtained approval as a dealer. This letter contained an instruction sheet and apparently an official form for the application. The next day, July 13, defendant filled out the form, stating therein: "We now operate service station only for minor repairs. However, I have just hired additional mechanic and will operate complete service station commencing next Monday." With this form defendant enclosed a letter wherein he stated that he included the form "so that we can get your approval to operate under Price Regulation 540." On July 24—the date of the sale here involved—the local office disapproved the application, and defendant received notice of disapproval on July 25.

Defendant contends that the approval stated by the local office to be a condition precedent to his qualification as a dealer was not legally required, and that the only question was whether he was in fact a dealer within the definition at the time he made the sale on July 24. But be that as it may, the evidence does not show that he then met the qualifications; and the finding of the court that he did not appears amply justified. It seems to be accepted, as defendant's letter conceded, that he was not operating a reconditioning service at the time the letter was written. True, he promised to qualify the following Monday by the employment of an additional mechanic. And the evidence shows that an additional mechanic did appear in defendant's garage as promised; but it was also clear that this mechanic had merely working space for himself, free of charge, "in the back of" defendant's garage, and that whenever he worked for defendant he did so by the job only and was paid for each job done. The remainder of the time he appears to have been working for himself. In fact the purchaser of the car here in question required some repair work done on the car at once; and so he had this mechanic do it and paid him therefor, not knowing anything about a supposed warranty on the car.

Now there were several difficulties in using this mechanic as the means by which defendant made and maintained the status of dealer. There is no evidence that other general equipment of what had been a "service station" only for "minor repairs" had now been brought up to the standard of a complete reconditioning establishment. And the mechanic, being available only by the special job, seemingly should aid defendant's position, if at all, not as bringing defendant's service station up to standard, but as a "reputable business engaged in the repairing and reconditioning of used cars." But then there must be shown an approval in writing by a local pricing office after the applicant has provided adequate evidence that "he has established, and is in a financial position to maintain," this working arrangement—conditions which were not met here. Finally, there is no evidence that defendant even tried to warrant the car he had sold; in fact the purchaser showed the absence of a warranty by hiring and paying the mechanic for doing the necessary repairs.

Thus the evidence was ample to sustain the findings that defendant was not a dealer, and that by July 24 he knew of the requirements sufficiently so that the sale he then made was a knowing and willful violation of the statute. United States v. Illinois Cent. R. Co., 303 U. S. 239, 58 S.Ct. 533, 82 L.Ed. 773; Zimberg v. United States, 1 Cir., 142 F.2d 132, certiorari denied 323 U.S. 712, 65 S.Ct. 38. Nor does the attack upon the court's findings convince us of error. Unlike civil cases, there is no requirement of detailed findings in a jury-waived criminal case; but the judge did set forth all the facts stated above in narrative form in an opinion he prepared directing the judgment which was entered.

So far forth there could have been no question. But he wrote another and a later opinion in denying a motion to set aside the judgment of conviction, and defendant now relies upon the last statement in that opinion as upsetting the otherwise clear result. Before reaching that point, the court had noted seriatim that defendant did not himself at any time maintain a place of business for the reconditioning of cars; that, while he filed an application for approval as a dealer, it did not disclose "what his financial position was nor what working arrangements, if any, he had" for such reconditioning; that this application was not approved; and that, while this car was sold at the maximum price fixed for the sale of a car upon a warranty, "there is nothing to show that any warranty was given." The opinion then continued: "So whether defendant met the qualifications of a 'Dealer,' not required to apply for approval as such, or whether he was required to apply for this approval, there was a violation of the regulation."

It is true that this sentence wants somewhat in clarity. Probably the court was intending to say only that there was a violation of the regulation, on whatever alternative theory of the facts or law defendant chose to rely—a quite justified observation. But the statement at most is a conclusion, obviously not intended to be in the defendant's favor; and there is no basis for holding that it casts doubt upon the facts clearly found against him elsewhere. We may well disregard it as somewhat ambiguous surplusage.

Conviction affirmed.