## WILTON v. UNITED STATES.
### No. 10740.

Circuit Court of Appeals, Ninth Circuit.

June 28, 1946.

Paul Taylor, of Los Angeles, Cal. (Joseph D. Taylor and Ellwood W. Kemp, Jr., both of Los Angeles, Cal., of counsel), for appellant.

Charles H. Carr, U. S. Atty., James M. Carter and Ernest A. Tolin, Asst. U. S. Attys., and William Strong, Sp. Asst. to U. S. Atty., all of Los Angeles, Cal., for appellee.

Before MATHEWS, STEPHENS and ORR, Circuit Judges.

STEPHENS, Circuit Judge.

An information in seven counts was filed in the district court, charging Hugh Wilton with violations of the Emergency Price Control Act of 1942, as amended, 50 U.S. C.A.Appendix, § 901 et seq. The cause proceeded to a jury trial, during which Count 2 was dismissed upon motion of the government. A verdict of guilty was returned by the jury as to each of the remaining counts, and sentence upon each thereof was pronounced. Wilton appeals.

Count 1 of the information, which is quoted in the margin,[1] is typical of the oth-

---

[1] "That the defendant, Hugh Wilton, during all times herein mentioned was and now is the operator of that certain apartment building hereinafter described, and as such operator was and now is in charge of the renting and offering for rent of the housing accommodations contained therein; that on or about the 30th day of October, 1943, in the City of Los Angeles, County of Los Angeles, State of

ers, differing in names, dates, amounts et cetera.

Appellant was the operator and in charge of the renting and offering for rent of premises at 435 and 441 North Figueroa Street, Los Angeles, consisting of an apartment house or houses. He filed with the local Office of Price Administration registration statements for rental dwellings showing the rentals charged therefor on March 1, 1942, and they were approved. Subsequently, he attempted to re-register the premises, registered as apartment houses, as rooming houses. (The statements upon which the original registration was based, and the statement concerning the proposed re-registration, were introduced into evidence.) The Office of Price Administration, after inspection of the premises, informed the appellant that the property could not be put into the rooming house classification and that the re-registration was not approved. Appellant claims that the re-registration was complete or at least that he acted in good faith in believing that it was complete, hence any violation was without wilfulness. A representative of the Office of Price Administration testified that appellant registered (re-registered) his property with her; that she informed him they would accept the registration, but that first they would have to make an inspection of the premises. She further testified that the inspection was made and that when appellant returned to the office the next day, he was informed that his registration had not been approved. The one who made the inspection testified that she told appellant that the units were apartments.

The record discloses six registrations of the apartment units enumerated in the information, indicating a maximum rent on a monthly basis, effective March 1, 1942, and also receipts for rent for the periods mentioned in the information. The receipts show two-week periods for the most part, at a rate of $10 per week, which on a monthly basis amounts to a higher rate than that registered and approved by the Office of Price Administration for the apartments. Testimony of some of the witnesses, tenants of the premises, failed to bring out explicitly that the rent they paid was for the particular unit numbered in the information, but they identified the rent receipts exhibited by the government, signed by appellant, which included their names respectively, the amount of rents paid, and the dates which these payments covered.

 We hold that there was ample evidence to support the jury's verdict that illegal changes and collections were wilfully made by appellant. See Stein v. United States, 9 Cir., 153 F.2d 737, and cases cited therein. Appellant questions the correctness of the court's instruction on the subject of wilfulness. The instruction given was as follows:

"You will note that it is charged in the information that the acts alleged to be done were done knowingly and wilfully.

"Doing or omitting to do a thing knowingly and wilfully implies not only a knowledge of the thing, but a determination with a bad intent to do it or to omit doing it.

"When used in a criminal statute, it generally means an act done with a bad purpose. The word is also employed to char-

---

California, in the Southern District of California, and in the Central Division thereof, and within the jurisdiction of this Court, said defendant, Hugh Wilton, as such operator, did knowingly, wilfully and unlawfully demand of and receive from Mr. and Mrs. Edgar M. Mathews, rent in the amount of Twenty Dollars ($20.00) as two (2) weeks' rent for the period September 28th, 1943 to October 12th, 1943, for the housing accommodations consisting of Apt. No. 16 in the apartment building located at 441 North Figueroa Street, in said City of Los Angeles, and within the Los Angeles Defense Rental Area, which said apartment unit at all times herein mentioned had a maximum rent for said two (2) weeks' period of $8.00, under Rent Regulation for Housing, (8 Fed.Reg. 7322), issued by the Administrator of the Office of Price Administration, pursuant to Section 2 of the Emergency Price Control Act of 1942, Pub.L. 421, 77th Cong. 2d Sess., 56 Stat. 23, January 30, 1942); contrary to the form of the Statute in such case made and provided and against the peace and dignity of the United States (Emergency Price Control Act of 1942, Pub.L. 421, 77th Cong. 2d Sess., 56 Stat. 23, January 30, 1942)."

acterize a thing done without ground for believing it is lawful, or conduct marked by careless disregard whether or not one has the right so to act."

These instructions were not prejudicial to appellant. Appellant also complains that "the charge amounted to a direction to find the defendant guilty if the main facts were *believed* by the jury to be true." The point being that mere belief was sufficient as distinguished from the requirement that the belief must be beyond reasonable doubt. However, the instructions abound in expressions that such belief must be beyond a reasonable doubt.

Appellant next contends that the court failed to properly instruct the jury as to the offense with which appellant was charged.

The court instructed the jury:

" * * * it is the exclusive province of the Judge of this Court to instruct you as to the law that is applicable to the case in order that you may render a general verdict upon the facts in the case, as determined by you, and the law as given you by the Judge in these instructions. It would be a violation of your duty for you to attempt to determine the law or to base a verdict upon any other view of the law than that given you by the court * * *.

* * * * *

"The offense with which the defendant is charged is: Violation of Rent Regulation for housing issued pursuant to the Emergency Price Control Act of 1942.

* * * * *

"The defendant is here prosecuted for alleged violations of the Emergency Price Control Act of 1942. This law was adopted by the Congress of the United States pursuant to authority given to the Congress of the United States by the Constitution.

* * * * *

"At all times pertinent to this case it was the duty of a landlord desiring to raise the rental of housing accommodations in Los Angeles County, to file a petition for permission to do so with the Area Rent Office of the Office of Price Administration and to await the approval of that authority before accepting any rental for a housing accommodation at a rate higher than that charged for the same housing accommodation on March 1, 1942.

"Concerning Count One, you are instructed that if you believe beyond a reasonable doubt that the defendant demanded and received from Mr. and Mrs. Edgar Matthews, or either of them, the sum of $20.00 as rental for the two-week period commencing on or about September 28, 1943, and that such payment was rental for a housing accommodation at 441 North Figueroa Street in this City, and that the same housing accommodation was actually rented on March 1, 1942, at a lower rental; and that defendant knowingly and wilfully charged a higher rental for the period beginning September 28, 1943, than he knew was charged therefor on March 1, 1942, and that the Area Rent Office had not made an order authorizing such a higher rental, then you will find him guilty as charged in Count One. [Instructions on the other counts are similarly worded.]

* * * * *

"Neither expenditures for remodeling nor the addition of furniture would warrant the defendant in raising the rent above the March 1, 1942, rate. If he made such expenditures or changes which then entitled him to added rental, his remedy was to secure the approval of the change from the Office of Price Administration before asking or receiving additional rent.

"Nor could he without approval of the Office of Price Administration, by merely increasing the number of occupants change the nature of the establishments from apartment houses to rooming houses and charge rooming house rates.

"If without such approval, the defendant knowingly and wilfully charged the higher rentals as alleged in any of the counts of the information, then he is guilty of the charge in the particular count of the information, even though you should be convinced that he actually made the changes or incurred the expenditures."

The regulation pursuant to the Emergency Price Control Act provides in Section 2 thereof, and under which the appellant is charged, that " * * * no person shall demand or receive any rent for use or occupancy on and after the effective

436

date of regulation of any housing accommodations * * * higher than the maximum rents provided by this regulation * * *." The effective maximum rent date is March 1, 1942, and that of the regulation is November 1, 1942. The date by which the registration statement was required to be filed was December 16, 1942.

While we think it is better practice to be more explicit in stating the essential elements of the offense charged, yet we are of the opinion that the instructions as given are not erroneous because of fatal omissions as we found them to be in Corson v. United States, 9 Cir., 1944, 147 F.2d 437, and which the Third Circuit found the instructions to be in United States v. Levy, 1946, 153 F.2d 995, and in United States v. Noble, 3 Cir., May 8, 1946, 155 F.2d 315. When the court in the course of its instructions told the jury: "At all times pertinent to this case, it was the *duty* of a landlord," etc., and then stated pertinent elements of the crime charged, it could only have been understood by the jury as instructing them that it *"is the law"* et cetera. (Emphasis ours.) It is not required that a judge define the offense in the language of the statute, but only that he adequately state its essentials.

Affirmed.