**UNITED STATES v. KLASS et al.**

**No. 9374.**

Circuit Court of Appeals, Third Circuit.

Argued June 6, 1947.

Reargued Nov. 19, 1947.

Decided Feb. 11, 1948.

GOODRICH, McLAUGHLIN, and O'CONNELL, Circuit Judges, dissenting in part.

———◆———

Max Mehler, Edward Abromson, and Samuel I. Kessler, all of Newark, N. J., for appellants.

Edgar H. Rossbach, U. S. Atty., of Newark, N.J., for appellee.

Before BIGGS, MARIS, GOODRICH, McLAUGHLIN, O'CONNELL, and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

The three appellants herein were convicted on an information charging them with violation of Priorities Regulation 33, and amendments thereto, issued January 16, 1946, by the Civilian Production Administration under authority of Executive Order, No. 9638, 50 U.S.C.A.Appendix, § 601 note, 10 F.R. 12591, issued pursuant to Section 2(a) (8) of the Second War Powers Act of 1942, 50 U.S.C.A.Appendix, § 633. Specifically, they were alleged to have sold, wilfully and unlawfully, a one family dwelling for $10,500, which was $1,500 more than the authorized maximum sales price. Klass was the owner and builder of the house in controversy, and Stalford and Happel his agents in the sale; the latter were charged as principals on the basis of the aiding and abetting statute, 18 U.S.C.A. § 550.

Four asserted errors are the basis of this appeal: (1) The scope of the cross-examination of the appellants permitted the government, (2) the admission of evidence of other alleged similar offenses, (3) the Court's charge on character evidence, and (4) the charge of the Court relating to possible anomalous findings as to guilt.

The first two of these alleged errors may be taken together. The factual background is as follows. The government had presented its case in chief and rested. Upon the conclusion of the presentation of the defense for Klass and Happel, the governmen requested and, over objection, received permission to recall both. Questions were asked relating to sales of houses to one Krucovsky and to one Reddington. The sales were admitted, but it was denied that anything above the maximum price was demanded and/or received. Subsequently Stalford took the stand in his own defense. On cross-examination similar questions were propounded with respect to the same houses; he likewise admitted the sales, but denied having demanded or received any excess money. The defense for the three appellants concluded, the government, with permission of the court, called in rebuttal Albert Krucovsky, Martin Reddington and Frank Reddington, his father. These men testified to the purchase from the appellants

of two houses in the same development as the house here involved at times subsequent to that charged in the information. They further testified that the appellants demanded and received from them a price in excess of that established as the maximum.

Objections to the cross-examination of the appellants as related, and to the rebuttal testimony of Krucovsky and the Reddingtons were overruled on the ground that the evidence so adduced went to the issue of *intent* and *wilfullness*.

In his charge to the jury, the trial judge stated: "You may consider only for the purpose of indicating intent and wilfullness the evidence of Krucovsky and the other young man and his father who gave that testimony." The government contended below, and does so here, that the evidence so adduced bore on the question of credibility as well as intent and wilfullness.

With respect to the recalling of Klass and Happel, that is ordinarily a matter left to the discretion of the trial judge, and we perceive no prejudicial error on that score per se here.

First as to the scope of the government's cross-examination:

At the outset it should be stated that we do not question the well-settled rule that a defendant who offers himself as a witness in his own behalf has the same privileges and suffers the same limitations which inhere in witnesses generally. Reagan v. United States, 1895, 157 U.S. 301, 305, 15 S.Ct. 610, 39 L.Ed. 709; Johnson v. United States, 1943, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704; Brown v. United States, 3 Cir., 1936, 83 F.2d 383, 386; United States v. Bradley, 3 Cir., 1945, 152 F.2d 425, 426.

On direct examination, neither Happel nor Stalford testified on the subject of other sales of houses. Klass, on direct examination, did state that he had not "bought or sold any other houses besides this one". While it is apparent that Klass was thinking in terms of agency, nevertheless on cross-examination he admitted other sales. We do not believe that the whole subject of price insofar as other transactions were concerned was thereby opened as

to any of the appellants, least of all as to Happel and Stalford.

Insofar as the extent of cross-examination is a matter resting within the sound discretion of the trial court, the learned trial judge properly ruled that the testimony with which we are now concerned was inadmissible for the purpose of attacking the credibility of the appellants. There is, indeed, a conflict as to whether acts of misconduct not resulting in conviction are the proper subject of cross-examination to impeach a witness. Cf. Little v. United States, 8 Cir., 1937, 93 F.2d 401, 409, certiorari denied 303 U.S. 644, 58 S.Ct. 643, 82 L.Ed. 1105; United States v. Sager, 2 Cir., 1931, 49 F.2d 725, 730; 3 Wigmore on Evidence (3rd ed. 1940) Sections 983, 986. In United States v. Montgomery, 3 Cir., 1942, 126 F.2d 151, at page 155, certiorari denied 316 U.S. 681, 62 S.Ct. 1268, 86 L.Ed. 1754, we said, "* * * we believe the rule with respect to impeachment for former conviction, as generally applied by federal courts in criminal cases, to be that it is only convictions for felony or misdemeanors amounting to crimen falsi which are admissible to impeach a witness' credibility." This reflects the true purpose of impeaching evidence, to disclose the personal turpitude of the witness and his insensibility to the obligations of his oath to speak the truth. Coulston v. United States, 10 Cir., 1931, 51 F.2d 178, 180. There is no reason why the standard should be less exacting where no conviction is involved. See Simon v. United States, 4 Cir., 1941, 123 F.2d 80, 85, certiorari denied 314 U.S. 694, 62 S.Ct. 412, 86 L.Ed. 555.

The government urges that the impeaching substance lay not only in the commission of another similar offense, but also in the contradiction of the appellants' testimony on cross-examination by the rebuttal testimony of Krucovsky and the Reddingtons. Except in the event of a record of conviction, contradictory extrinsic evidence is not admissible, it being long settled that the answer of the witness on cross-examination with respect to a collateral matter introduced for impeachment purposes concludes the inquiry. United States v. No-

vick, 2 Cir., 1941, 124 F.2d 107, 109, certiorari denied 315 U.S. 813, 62 S.Ct. 795, 86 L.Ed. 1212; United States v. Nettl, 3 Cir., 1941, 121 F.2d 927; Cohen v. United States, 1 Cir., 1932, 56 F.2d 28, 30; Coulston v. United States, supra; Sager v. United States, supra; Smith v. United States, 9 Cir., 1926, 10 F.2d 787, 788; Newman v. United States, 4 Cir., 1923, 289 F. 712; cf. Martin v. United States, 1942, 75 U.S.App.D.C. 399, 127 F.2d 865, 866; Simon v. United States, supra; see also (1914) 14 Col.L.Rev. 155; 3 Wigmore on Evidence (3rd ed. 1940) Section 979; 5 Jones, Commentaries on the Law of Evidence (2d ed. 1926) Section 2367.[1] It may be noted that the Sager, Cohen and Coulston cases were cited with approval in United States v. Montgomery, supra.

■ The court below admitted the evidence related above on the theory that it was relevant to intent and wilfullness. It is true that other criminal acts, while not ordinarily competent evidence, are admissible to show intent, motive, identity, scheme or plan, etc.[2] Boyd v. United States, 1892, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077, United States v. Fawcett, 3 Cir., 1940, 115 F.2d 764, 768, 132 A.L.R. 404; 2 Wigmore on Evidence (3rd ed. 1940) Section 300 et seq.

■ The parties have argued the meaning of the term "wilfully" as used in the statute[3] and the Regulation,[4] i. e., whether it encompasses an "evil intent." [5] We are of the view that patently no specific intent is involved in the crime alleged to have been committed by these appellants.

---

[1] Dowling Bros. Distilling Co. v. United States, 6 Cir., 1946, 153 F.2d 353, 361, certiorari denied Gould v. United States, 328 U.S. 848, 66 S.Ct. 1120, 90 L.Ed. 1622, holds otherwise where the trial court in its discretion allows the contradiction; but see Simon v. United States, 4 Cir., 1941, 123 F.2d 80, 85, certiorari denied 314 U.S. 694, 62 S.Ct. 412, 86 L.Ed. 555. The cases cited in support of that holding, however, are cases where prior convictions were shown, except in United States v. Skidmore, 7 Cir., 1941, 123 F.2d 604, where it does not appear that the answers of the witness on cross-examination were sought to be contradicted, and in United States v. Rubenstein, 2 Cir., 1945, 151 F.2d 915, certiorari denied 326 U.S. 766, 66 S.Ct. 168, 90 L.Ed. 462, where the evidence was admissible in any event. In Schwartz v. United States, 9 Cir., 1947, 160 F.2d 718, 721, the evidence was likewise admissible for other reasons as therein stated.

[2] This form of statement of the general rule has been criticized. Stone, Exclusion of Similar Fact Evidence, (1938) 51 Harv.L.Rev. 988.

[3] Section 2(a) (5) of the Second War Powers Act, 50 U.S.C.A.Appendix, § 633, provides, "Any person who willfully performs any act prohibited, or willfully fails to perform any act required by, any provision of this subsection (a) or any rule, regulation, or order thereunder, whether heretofore or hereafter issued, shall be guilty of a misdemeanor * * *."

[4] Section 944.34(n) of P.R. 33 provides, "Any person who wilfully violates any provision of this regulation or who, in connection with this regulation, wilfully conceals a material fact or furnishes false information to any Department or Agency of the United States is guilty of a crime. * * *"

[5] On the basis of a distinction drawn in United States v. Murdock, 1933, 290 U.S. 389, 394, 54 S.Ct. 223, 78 L.Ed. 381, and in United States v. Illinois Central Railroad Co., 1938, 303 U.S. 239, 242, 58 S.Ct. 533, 82 L.Ed. 773, a number of cases have been found holding that an "evil purpose", "criminal intent", or the like, is not within the contemplation of the term "wilfully" as used in the Second War Powers Act of 1942, and the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 925 (b); rather, it is sufficient if the prohibited act is done knowingly and voluntarily as distinguished from accidentally. Gomila v. United States, 6 Cir., 1946, 159 F.2d 1006, 1009; Kempe v. United States, 8 Cir., 1945, 151 F.2d 680, 688; Zimberg v. United States, 1 Cir., 1944, 142 F.2d 132, 137, certiorari denied 323 U.S. 712, 65 S.Ct. 38, 89 L.Ed. 573; cf. Stein v. United States, 9 Cir., 1946, 153 F.2d 737, 742, certiorari denied 328 U.S. 834, 66 S.Ct. 980, 90 L.Ed. 1610; United States v. Stein, 2 Cir., 1946, 154 F.2d 254, 255; United States v. George F. Fish, Inc., 2 Cir., 1946, 154 F.2d 798, 801, certiorari denied 328 U.S. 869, 66 S.Ct. 1377, 90 L.Ed. 1639, and see Wilton v. United States, 9 Cir., 1946, 156 F. 2d 433, 435. Careful perusal of United States v. Angelo, 3 Cir., 1946, 153 F.2d 247, 249, reveals that there the charge was in connection with counterfeit ration stamps, an inherently distinguishing feature.

In the instant case, the issue was framed by the government's charge that the house had been sold for $10,500, a sum in excess of the legal maximum, and the appellants' contrary contention that the sales price was the legal maximum of $9,000. The appellants admitted that they knew of the Regulation and also that they knew the maximum permissible sales price of the house. Mistake, accident, or any other circumstance of exculpation was not attempted to be asserted on their behalf. Accordingly, the single critical issue was whether the house was sold for $9,000 or $10,500. The rebuttal evidence of Krucovsky and the Reddingtons, therefore, was irrelevant by the time it was permitted, for clearly the fact of intent was not in controversy.

The government further seeks the admission of the rebuttal evidence on the theory that it comes within another exception to the general rule of exclusion, that is, it relates to scheme or plan. Plainly this is an after-thought, urged for the first time on this appeal. The court below did not pass upon the efficacy of the evidence, nor was the jury instructed as to its use, in this respect. See Hubby v. United States, 5 Cir., 1945, 150 F.2d 165, 168; Martin v. United States, supra. There is, moreover, sharp distinction between the requirements for showing intent and those for showing scheme or plan. 2 Wigmore on Evidence (3rd ed. 1940) Section 304. Professor Wigmore pointed out, in that work, page 202:

"When the very doing of the act charged is still to be proved, one of the evidential facts receivable is the person's Design or Plan to do it. * * * But where the conduct offered consists merely in the doing of other similar acts, it is obvious that something more is required than that mere similarity, which suffices for evidencing Intent. The object here is not merely to negative an innocent intent at the time of the act charged, but to prove a pre-existing design, system, plan, or scheme, directed forwards to the doing of that act. * * * The added element, then, must be, not merely a similarity in the results, but *such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.*" (Emphasis in text.)

It is also suggested that the trial court should pass upon the offer beforehand to see whether, if offered in its entirety it satisfies the proper test and is sufficient to go to the jury, and if sanctioned, to require an assurance that it will be forthcoming in such entirety.

Here we are dealing with evidence the nature of which has been long recognized as dangerous, in this court as well as others, from the point of view of trial procedure and fairness. It is never admitted unless its use is closely circumscribed, the ultimate objective being to cut away insofar as possible its otherwise harmful effects. We doubt that the evidence recorded meets the necessary standard; particularly that given by the Reddingtons was insufficient. But where the jury has not been instructed as to the precise purpose for which such evidence is admissible, we are not inclined to allow the evidence to remain on a wholly new theory injected into the cause for the first time on appeal.

Accordingly, we conclude that there was prejudicial error with respect to the cross-examination of the appellants, and with respect to the rebuttal evidence of the subsequent similar offenses.

The third error, asserted by the appellants, Klass and Stalford, relates to the charge of the court below on the part played in the ultimate determination of guilt by the character evidence adduced on their behalf. The jury was instructed as follows:

"Some of the defendants have produced what are known as reputation witnesses. The evidence which they gave is valid evidence and must be considered by you with all of the other evidence and may of itself be the basis for a reasonable doubt. But it must not be considered separate and apart from all the other evidence, *nor should reputation evidence alone bear with you against overwhelming evidence indicative of guilt.*

"It must be considered with all of the other evidence and weighed with that." (Emphasis supplied.)

We have recently reiterated the rule applicable to the proper treatment of reputation evidence. In United States v. Frischling, 3 Cir., 1947, 160 F.2d 370, we said:

"It has long been the rule that it is the duty of the trial judge to instruct the jury in substance that reputation of the defendant's good character, when put in evidence, is a fact which they should consider with the other facts in the case and which, when so considered, may, like other facts, generate a reasonable doubt which would justify acquittal. Edgington v. United States, 1896, 164 U.S. 361, 17 S.Ct. 72, 41 L.Ed. 467; Cohen.v. United States, 3 Cir., 1922, 282 F. 871; United States v. Quick, 3 Cir., 1942, 128 F.2d 832."

The italicized portion of the quoted charge is attacked here. The argument is that that statement destroys the effect of an otherwise proper charge that the character evidence must be considered along with all the other evidence in the case and when so considered may generate a reasonable doubt.

It is obvious that on reaching the conclusion that a defendant is guilty beyond reasonable doubt, the jury function ceases; there remains nothing but communication of the verdict. The court below fully discussed the accepted standard of proof required of the government in criminal cases, viz. beyond a reasonable doubt, and adequately explained the meaning of that phrase to the jury. The italicized statement, is, at the very least, confusing when compared to that standard. In effect, the learned trial judge instructed the jury that on finding "overwhelming" evidence *merely indicating* guilt, the reputation evidence must not "bear with you," that is, must not be considered. The jury may well have thought that the phrase was the equivalent of "beyond a reasonable doubt". However, the jury could quite properly conclude, indeed we think it was obliged to conclude, that something less was intended and that at some point in the course of its deliberations before it was convinced of guilt beyond a reasonable doubt, the reputation evidence, even though believed, must be dropped from consideration; it could legiti-

mately infer from the declaration " * * * nor should reputation evidence alone bear with you against overwhelming evidence indicative of guilt" that if it first found "overwhelming" evidence *merely indicating* guilt, it could justifiably disregard the reputation evidence.

In Sunderland v. United States, 8 Cir., 1927, 19 F.2d 202, 215, the rule was stated as requiring an instruction setting forth (1) the purpose and function of such evidence, viz., to generate a reasonable doubt; (2) the probative status of such evidence, viz. that it is entitled to be considered whether the other evidence in the case be clear or doubtful; and (3) the possible effect of such evidence, viz. that when it is considered with the other evidence, if a reasonable doubt is created as to defendant's guilt, he is entitled to an acquittal. Of course, mere proof of good character does not entitle a defendant to a verdict of acquittal. United States v. Quick, 3 Cir., 1942, 128 F.2d 832, 836. We do not hold here that proper expression cannot be found to guard against the abuse of reputation evidence in the jury room, but we are constrained to hold that the charge as given in this case was at the very least confusing and prejudicial.

The theory in support of the charge as given is simply that the court may express to the jury the thought that the other evidence in the case may be so convincing that reputation evidence is worthless, as where fifty eye witnesses testify to the commission by the defendant of the crime charged. In reality, that notion is not so much connected with the use of reputation evidence as it is with the reasonableness of the doubt which the jury might entertain. On analysis, the theory is merely the expression of a fear that the jury will not adhere to the directions of the court with respect to the meaning of "beyond reasonable doubt." It cannot lightly be assumed that a jury which has been acquainted with the legal definition of that phrase will fall into the trap envisioned. It need only be noted here that by the decision in Edgington v. United States, 1896, 164 U.S. 361, at page 366, 17 S.Ct. 72, 74, 41 L.Ed. 467, we are committed to the proposition, stated therein,

380

"* * * that good character, when considered in connection with the other evidence in the case, may generate a reasonable doubt. The circumstances may be such that an established reputation for good character, if it is relevant to the issue, would alone create a reasonable doubt, *although, without it, the other evidence would be convincing.*" (Emphasis supplied).

In United States v. Quick, supra, we followed that decision saying, at page 836 of 128 F.2d:

"But it is equally true that evidence of good character, when considered along with all of the other evidence in the case, may be the factor which creates the reasonable doubt which entitles a defendant to an acquittal by the jury. Edgington v. United States, supra. The very object of introducing character evidence is to raise in the minds of the jury a reasonable doubt as to the defendant's guilt."

█ A charge on reputation evidence must meet the requirements thus set forth and the defendant who adduces such evidence is entitled to have it considered, if believed, along with all the other evidence in the case until the jury is convinced of his guilt beyond a reasonable doubt, no matter how convincing the other evidence may appear to be. That, we assume, is the purport of the statement in the Edgington case "* * * although, without it, the other evidence would be convincing." It logically follows that if all the evidence, including the reputation evidence, convinces the jury beyond a reasonable doubt of the defendant's guilt, the inquiry is at an end.

Sight must not be lost of the fact that instructions are given en masse to the jury. It does not have the opportunity of scrutinizing at will the directions given to it. The impression derived from the reading will generally prevail. We believe the patent impression conveyed by the language of the charge "nor should reputation evidence alone bear with you against overwhelming evidence indicative of guilt," did not carry out the command previously given to the jury that all the credible evidence must be such as to exclude every reasonable hypothesis but that of guilt.

Finally, it is contended that there was error in the charge to the jury with respect to possible anomalous findings of guilt. The part of the charge complained of is as follows:

"The verdict as you return it will be a verdict of guilty or not guilty for each of these defendants. But I will say this to you, that *it would be contradictory and anomalous if you were to find the builder not guilty and the other two guilty; because they are brought in specifically on the theory of aiding and abetting. Keep that in mind, please. You can't aid and abet nobody.*

"So you will weigh the evidence as it comes before you, as it relates to each of these defendants."

It should be noted that of the three appellants, only Klass raises a question as to the propriety of the charge, although in the court below exception was taken on behalf of all. It is urged by Klass, in effect, that although the jury was instructed to return a verdict of guilty or not guilty for each of the appellants, the jury might have concluded from the comments following such instruction that a verdict of acquittal of Klass might be improper.

█ With the advent of Section 332 of the Criminal Code, 18 U.S.C.A. § 550,[6] it became certain that the accessory to either a felony or misdemeanor occupied the same position as an accessory to a misdemeanor at early common law.[7] It is not necessary that the actual principal be tried or convicted, nor is it material that the actual principal has been acquitted. The aider and abettor may be charged with the substantive offense, and each participant must stand on his own two feet. Cf. Rooney v. United States, 9 Cir., 1913, 203 F. 928; see Kelly v. United States, 6 Cir.,

---

6 "Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

7 Cf. Regina v. Burton, 13 Cox C.C. 71 (1875); see 1 Brill, Cyclopedia of Criminal Law (1922) 219.

1919, 258 F. 392, 402; Vesely v. United States, 9 Cir., 1921, 276 F. 693, 695; Bacon v. United States, 10 Cir., 1942, 127 F.2d 985, 987; Von Patzoll v. United States, 10 Cir., 1947, 163 F.2d 216, certiorari denied October 27, 1947, 68 S.Ct. 110; cf. also Sealfon v. United States, 1948, 68 S.Ct. 237.

While it is generally true that inconsistent verdicts need not be disturbed on review,[8] there is no reason for denying to the trial judge the authority to comment upon the logic of the situation.

However, the particular difficulty with the quoted charge lies in the assertion of interrelationship of guilt, from which the jury might conclude that to convict any it had to convict all. The error is clear as to Klass, but it is not altogether free from doubt that Stalford and Happel could not have been affected; we note this for the reason that the case is to be retried.

For the reasons stated, the judgments will be reversed and the cause remanded with directions to grant a new trial.

GOODRICH, Circuit Judge (dissenting in part).

While agreeing that there must be a reversal, it seems to me unfortunate that one ground of it be the charge of the Trial Judge on character testimony. It seems pretty obvious that what the Judge was doing was telling the jury a perfectly common sense proposition to the effect that if there is sufficient direct testimony proving that a particular man committed a particular offense, the fact that that man has a good reputation may become unimportant. I cannot think that what was said to the jury misled them in any way. And I do think that this Court is building up such a series of fine-line requirements and distinctions in connection with this character rule that soon a Trial Judge will find himself free from reversal only if he copies out and reads to the jury verbatim the last pronouncement of this Court on the subject. A line of decisions which tends to require the stereotyping of instructions to juries is unfortunate.

McLAUGHLIN, Circuit Judge (dissenting in part).

I agree with the majority that the judgment of conviction against all of the defendants should be reversed because of errors in the trial court's charge respecting character evidence and possible anomalous findings as to guilt. I do not agree that the scope of the cross examination permitted or the admission of the disputed rebuttal testimony constituted error and agree with Judge O'CONNELL's dissenting views on these questions.

O'CONNELL, Circuit Judge (dissenting in part).

In my opinion, only the judgment entered against defendant Klass should be reversed and the cause remanded for a new trial, and the judgments against defendants Happel and Stalford should be affirmed. For purposes of convenience, I shall discuss the issues in the same order as they are presented in the majority opinion of this court.

*A. The scope of the cross-examination and the admission of the rebuttal testimony.*

I am persuaded that the questions asked defendants by the prosecution and the receipt of the rebuttal testimony were at least matters in which the trial judge could properly exercise discretion. Voluntarily taking the stand in his own behalf, Klass in direct examination had testified as follows:

Mr. Abramson (Klass' counsel): "Had you built any other houses before this?" Mr. Klass: "No, sir, I didn't."

---

[8] Dunn v. United States, 1932, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356, 80 A.L. R. 161; (1932) 45 Harv.L.Rev. 931; Borum v. United States, 1932, 284 U.S. 596, 52 S.Ct. 205, 76 L.Ed. 513; see Commonwealth v. Wade, 1944, 156 Pa. Super. 88, 39 A.2d 460; Commonwealth v. Kirk, 1940, 141 Pa.Super. 123, 147, 14 A.2d 914, affirmed 1941, 340 Pa. 346.

17 A.2d 195; Commonwealth v. Mowad, 1939, 136 Pa.Super. 537, 7 A.2d 596; Commonwealth v. Kline, 1933, 107 Pa.Super. 594, 599–604, 164 A. 124; State v. Bullock, 132 A. 198, 4 N.J.Misc. 195, affirmed 1926, 103 N.J.L. 204, 134 A. 919; State v. Handy, Del.Gen.Sess.1907, 66 A. 836.

382

Mr. Abramson: "This is the first house you ever built?"

Mr. Klass: "Yes, sir."

Mr. Abramson: "Have you ever bought or sold any other houses besides this one?"

Mr. Klass: "No, sir, I didn't."

It seems to me questionable that this testimony was elicited merely to explain Klass' experience as a man dealing in real estate, and not as part of a defense seeking to establish that his position was not one readily adaptable to a scheme to violate the priority regulations. In any event, of his own accord Klass opened the door to inquiry into the nature of his real estate activities. It was virtually inevitable, after the defense in cross-examining the government witnesses had obviously directed its efforts toward impeaching the credibility of those witnesses, and after the defense affirmatively had sought to prove a diametrically contrary set of facts, that the credibility of the defense witnesses would likewise be subjected to piercing cross-examination and such rebuttal testimony as was available. In this connection, it might be pointed out that the sales to Krucovsky and Reddington did not come to the attention of the United States Attorney until the day when Happel and Klass were recalled to the stand. Consequently, I believe that the questions asked defendants and the introduction of the rebuttal testimony directly affecting their credibility was completely proper.[1]

In support of the principle outlined above, Dowling Bros. Distilling Co. v. United States, 6 Cir., 1946, 153 F.2d 353, certiorari denied Gould v. United States, 1946, 328 U.S. 848, 66 S.Ct. 1120, 90 L.Ed. 1622, rehearing denied 1946, 329 U.S. 820, 67 S.Ct. 29, with a set of facts not unlike those of the case sub judice, is apropos. In the court's own words, "Another grie-

vance relates to the admission, by way of rebuttal, of testimony received from witnesses, Rothman, Gustin and Friedman, as to overpayments made by each of them to Gould under circumstances similar to those charged in the indictment. This evidence is sharply attacked as incompetent because it tended to show crimes other than those charged in the indictment, and also attacked as not proper evidence in rebuttal. It appears, however, that Gould, while a witness in his own defense, had testified on cross-examination that he never sold any whiskey over the ceiling. It was proper rebuttal going to the credibility of Gould, whatever infirmity, if any, might have attached to it in other circumstances. It is well established that evidence otherwise admissible does not become inadmissible merely because it tends to show other offenses not charged, and its reception is within the sound discretion of the Court. [Citing cases.]" 153 F.2d at page 361.

The Dowling Bros. case seems to me to have resolved any inconsistency which might previously have existed in the court decisions cited in the majority opinion, and supports the admission of testimony such as that adduced in the case sub judice.

If the evidence was admissible as affecting credibility, defendants would be compelled to resort to an argument that the court below nonetheless admitted the evidence solely for another purpose allegedly improper, and that this constituted prejudicial error. For the moment I shall assume arguendo that the court below erred in admitting the testimony for the purpose of proving intent or wilfulness. Even so, the cases appear to me to refute the contention that reversible error was thereby committed, particularly when it is noted that the United States Attorney offered the testimony partially as affecting credibility.[2] In Haywood v. United States, 7 Cir., 1920,

---

[1] The majority opinion takes the position that questions as to sale price went beyond the legitimate scope of cross-examination, particularly as to Happel and Stalford. I am not prepared to say that as a matter of law such questions were not germane, especially when it is recalled that defendants were being tried upon the theory of having jointly violated the priorities regulation.

[2] The explanation of the United States Attorney for offering the testimony was, "The plain purpose, if your Honor please, is based upon a long-established line of cases which permits similar transactions at about the same time as bearing on the question of wilfulness, the question of intent, *the question of truth.*" (Emphasis supplied.)

268 F. 795, certiorari denied 1921, 256 U.S. 689, 41 S.Ct. 449, 65 L.Ed. 1172, which involved a conspiracy by officers of the I.W.W. to violate or obstruct the execution of various federal laws, the defendants objected to the receipt in evidence of matters antedating the passage of two of the statutes. On review, the appellate court said, at page 806 of 268 F., "If the court erred in admitting them on the ground that they had probative force in establishing the criminal intent charged in these counts, *the ruling was harmless if the matters were in fact admissible on any ground."* (Emphasis supplied.) In Silverman v. United States, 1 Cir., 1932, 59 F.2d 636, certiorari denied 1932, 287 U.S. 640, 53 S.Ct. 89, 77 L.Ed. 554, the trial court was assumed to have admitted certain bank balances in evidence to contradict the statements of the defendant that her husband had a little antique shop. The bank statements were not admissible for that purpose, but could have been admitted to show financial dealings inconsistent with the defendant's occupation as a housewife. The court said, at page 639 of 59 F.2d, "Being admissible for this [latter] purpose, the evidence was not prejudicial because it was admitted on erroneous grounds, and on the record the verdict of the jury seems to have been fully warranted. [Citing cases.]" See also Rule 52(a), Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687, and I Wigmore on Evidence, § 13, page 300.

Moreover, I am by no means convinced that intent or wilfulness was not a necessary element of the offense charged. In United States v. Angelo, 3 Cir., 1946, 153 F.2d 247, at page 249, this court took the position that "The penal provisions of the basic statute [the Second War Powers Act of 1942] are applicable only to violations of a statute which are willful." I see no reason why this statement should be limited to cases involving counterfeit ration stamps, nor why the situation here under consideration warrants a different result. Also, in Stein v. United States, 9 Cir., 1946, 153 F.2d 737, at page 741, certiorari denied 1946, 328 U.S. 834, 66 S.Ct. 980, 90 L.Ed. 1610, it was stated that an offense against the Second War Powers Act con-sists of "the performance of a prohibited act and the performance of it wilfully." See also Wilton v. United States, 9 Cir., 1946, 156 F.2d 433, 435. Furthermore, that at least one defendant here appealing deemed wilfulness important is attested by the fact that Klass' counsel requested the court to charge that "wilfulness is a necessary ingredient of the offense * * *" Under the circumstances, I think it was hardly superfluous for the United States Attorney to set out to prove, and for the trial judge to put the government to the task of establishing, that the behavior of defendants was wilful; for the failure to do so might well have been criticized later as reversible error; nor can defendants complain of the adoption of a greater burden of proof by the government than the circumstances may have required. Proving wilfulness by introducing evidence of other acts of a similar nature has been deemed permissible by this court in two recent cases. See United States v. Fawcett, 3 Cir., 1940, 115 F.2d 764, 768, 132 A.L.R. 404, and United States v. Bradley, 3 Cir., 1945, 152 F.2d 425, 426; and see United States v. Platt, 7 Cir., 1946, 156 F.2d 326, 327, and 1 Zoline's Federal Criminal Law and Procedure, §§ 359 and 360, pages 299-302.

For the reasons stated, I am impelled to the conclusion that the trial court did not commit reversible error in choosing to permit the cross-examination and rebuttal testimony here challenged.

## B. *The charge on character testimony.*

In United States v. Quick, 3 Cir., 1942, 128 F.2d 832, 835, this court had occasion to analyze in detail the requirements of a court charge as to character evidence. It is apparently undisputed that all standards of the Quick case have been met; but the charge nonetheless has been here held fatally defective because of the inclusion of the "overwhelming evidence" clause. While I agree that this portion of the charge might have been more fully and more artistically drawn, I am not prepared to say that the jury was not given an adequate and proper basis for weighing and considering the evidence. Reading the charge as a whole, I believe that the in-

384

structions to the jury concerning the character testimony were not so confusing and misleading as to constitute prejudicial error. Like my brother Goodrich, I think stereotyped charges on character testimony will become prevalent unless trial judges are permitted some leeway in expressing what weight should be accorded such testimony. It should be noted that, in any event, Happel cannot assert reversible error on the basis of this charge, since no character testimony was introduced on his behalf.

### C. The charge on possible anomalous findings of guilt.

I agree with the majority decision that the rights of Klass were affected substantially and prejudicially by the intimation that his acquittal would be improper if Happel and Stalford were found guilty. In my opinion, however, this error could not be asserted as the ground for the reversal of the convictions of Happel and Stalford, both because only Klass has questioned the propriety of the charge, and because the effect of the error was to provide an additional and unwarranted basis for the acquittal of Happel and Stalford; i. e., had the jury found Klass not guilty, it might have felt compelled to return similar verdicts in favor of Happel and Stalford as well. Moreover, the trial judge likewise instructed the jury that "If, however, you find that any one or both of these other two [Happel and Stalford] were simply sales agents and didn't enter into the proposition as aiding and abetting, *then they could not be held as principals, because Klass was the builder and the theory of the government,* as I have told you *is that they aided and abetted,* counselled and advised him and assisted him." (Emphasis supplied.) Accordingly, I do not see how Happel and Stalford could have been adversely affected by the charge, which, in fact, was substantially that requested by Happel's attorney.

In view of the foregoing comments, I believe that the judgments entered against Happel and Stalford should be affirmed, and that the judgment against Klass should be reversed and the cause remanded for a new trial.